IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| State of Utah, | ) | OPINION |
| | ) | |
| Plaintiff and Appellee, | ) | Case No. 20080796-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (June 14, 2012) |
| Raymond L. Bedell, | ) | |
| | ) | 2012 UT App 171 |
| Defendant and Appellant. | ) | |

-----

First District, Logan Department, 061100879
The Honorable Thomas Willmore

Attorneys:     Kenneth E. Lyon, Pocatello, Idaho, for Appellant
                    Mark L. Shurtleff and Marian Decker, Salt Lake City, for Appellee

-----

Before Judges Davis, Thorne, and Christiansen.

DAVIS, Judge:

¶1     Raymond L. Bedell challenges his conviction of sexual battery, a class A misdemeanor, *see* Utah Code Ann. § 76-9-702(3)-(4) (Supp. 2011).[1] We reverse and remand for a new trial.

---

1. Where the relevant provisions have not substantively changed, we cite the current version of the Utah Code for the reader's convenience.

## BACKGROUND

¶2     On October 1, 2003, Bedell, a physician specializing in pain management, met with the alleged victim (the Complainant) regarding her chronic knee and ankle pain and a bruised rib. The Complainant alleges that during that first visit, while she and Bedell were alone in the examining room, Bedell fondled her breasts for approximately ten minutes and "pressed up against [her] leg and . . . had an erection." Following this incident, the Complainant continued to see and receive prescriptions from Bedell for three months. During this time and afterward, the Complainant was abusing prescription medication. Several years after she stopped seeing Bedell, the Complainant was arrested for prescription fraud.

¶3     In May 2004, the Logan City Police Department began investigating allegations of sexual abuse against Bedell. Between that time and the time the Complainant brought her allegations to the police in fall 2006, at least nine women asserted allegations of sexual impropriety against Bedell.

¶4     While the Complainant was incarcerated in the Box Elder County jail, she met another inmate (the Inmate) who told her that Bedell was being investigated for sexual misconduct with respect to several of his patients. After hearing about the other allegations, the Complainant told the Inmate that she too had been touched inappropriately by Bedell, and the Inmate encouraged her to report the incident. The Complainant contacted the police in fall 2006 and disclosed the abuse to the detective in charge of the Bedell investigation (the Detective). The Detective considered her report credible because there were a number of "markers" that matched the allegations of the other women. Specifically, "the initial touching was always the breast," "the women touched had breast implants or very large breasts," each "touching was accompanied by inappropriate comments," and "[e]ach of the women [was] significantly dependent on prescription drugs."

¶5     Bedell was charged with two counts of forcible sexual abuse arising from the incident with Complainant. These charges were tried separately from those relating to Bedell's other accusers, but prior to trial, the State moved the trial court to admit evidence of the other nine women's allegations (the 404(b) evidence) under rule 404(b) of the Utah Rules of Evidence in order to show Bedell's "intent, motive, opportunity, absence of mistake or accident and a pattern of improper touching of women in a variety of settings and in a medical facility." The trial court denied the State's motion, determining that in light of the fact that Bedell was not asserting that the touching was

justified by a medical purpose, the proposed bad acts evidence was only minimally probative and its value was outweighed by the danger of unfair prejudice. Nevertheless, the trial court promised to revisit its ruling if Bedell "admits to any element of the sexual assault charges but professes a specific or general medical purpose in such an [admission]" or otherwise "'opens the door'" to the evidence. The record does not show that the trial court ever revisited this ruling.

¶6      At trial, both the State's direct examination and Bedell's cross-examination of the Detective alluded to the previous allegations by mentioning that Bedell was being investigated prior to the Complainant's disclosure and by referring to the markers that allegedly bolstered the Complainant's credibility. At one point during cross-examination, the State interrupted to request a bench conference. The bench conference was unrecorded, and the topic of the bench conference was never discussed on the record. On redirect, the State questioned the Detective regarding the specific allegations of six different women against Bedell, emphasizing the markers that were common among the women's allegations. Defense counsel did not object to this line of questioning. Bedell was ultimately acquitted of the two felony counts of forcible sexual abuse but was convicted of one lesser included offense of sexual battery, a class A misdemeanor.


ISSUES AND STANDARDS OF REVIEW


¶7      Bedell first requests that we reverse his conviction on the ground that the statute of limitations on the lesser included offense had expired prior to his being charged. Alternatively, he requests that we reverse his conviction and remand for a new trial based on the inappropriate admission of the 404(b) evidence in contravention of the trial court's pretrial ruling excluding such evidence.[2] Because neither of these arguments was preserved for appeal, Bedell has raised them on grounds of plain error and ineffective assistance of counsel. *See generally State v. Cram*, 2002 UT 37, ¶ 4, 46 P.3d 230 (listing plain error, exceptional circumstances, and ineffective assistance of counsel as exceptions to the preservation rule).

---

2. Bedell also argues that the trial court should have granted a new trial based on newly discovered evidence. However, because we agree that the 404(b) evidence was improperly elicited and remand for a new trial on that ground, we need not consider this additional argument.

¶8     In order to prevail on grounds of plain error, an appellant must show that "(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant, or phrased differently, our confidence in the verdict is undermined." *State v. Dunn*, 850 P.2d 1201, 1208 (Utah 1993). In order to prevail on grounds of ineffective assistance, a defendant must demonstrate, first, "that counsel's performance was deficient, in that it fell below an objective standard of reasonable professional judgment," and second, "that counsel's deficient performance was prejudicial—i.e., that it affected the outcome of the case." *State v. Litherland*, 2000 UT 76, ¶ 19, 12 P.3d 92 (citing *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)).


ANALYSIS

I.  The Statute of Limitations Did Not Preclude Charging Bedell with the Lesser
Included Misdemeanor Offense.

¶9     Bedell argues that it was plain error for the trial court to allow the lesser included class A misdemeanor charge for sexual battery to appear on the verdict form because the statute of limitations on that charge was two years, *see* Utah Code Ann. § 76-1-302(1)(b) (Supp. 2011) ("[A] prosecution for . . . a misdemeanor other than negligent homicide shall be commenced within two years after it is committed."), and the Complainant did not contact the police until three years after the alleged abuse took place. He also argues that his counsel performed ineffectively by failing to object to the instruction on the lesser included offense. But the Utah Code recognizes an exception to the statute of limitations:

> Whenever a defendant is charged with an offense for which the period of limitations has not run and the defendant should be found guilty of a lesser offense for which the period of limitations has run, the finding of the lesser and included offense against which the statute of limitations has run shall not be a bar to punishment for the lesser offense.

*Id.* § 76-1-305 (2008).[3] Thus, because the statute of limitations for the forcible sexual abuse charges had not yet expired when the charges were filed, *see generally id.* § 76-1-302(1)(a)(i) (Supp. 2011) ("[P]rosecution for . . . forcible sexual abuse shall be commenced within eight years after the offense is committed, if within four years after its commission the offense is reported to a law enforcement agency . . . ."), it was appropriate for the trial court to instruct the jury on the lesser included offense and Bedell could properly be convicted of that offense. Because no error occurred, Bedell's ineffective assistance and plain error arguments fail on this issue. *See generally State v. King*, 2006 UT 3, ¶ 21, 131 P.3d 202 ("To prevail under plain error review, a defendant must demonstrate . . . that an error did in fact occur." (internal quotation marks omitted)); *State v. Kelley*, 2000 UT 41, ¶ 26, 1 P.3d 546 ("Failure to raise futile objections does not constitute ineffective assistance of counsel.").

## II. Bedell Is Entitled to a New Trial Based on the Improper Admission of the 404(b) Evidence.

¶10 The State contends that defense counsel's performance was not deficient and that the trial court did not err by permitting the Detective to testify regarding the 404(b) evidence because it can be inferred that the trial court reversed its ruling excluding the 404(b) evidence during the unrecorded bench conference. Furthermore, the State asserts that we should construe the lack of record evidence regarding what happened during the bench conference against Bedell by assuming the regularity of the proceedings, i.e., by assuming that the trial court's failure to exclude the evidence was appropriate and supported by an off-the-record reversal of its original ruling. We decline to do so because it is the State, not Bedell, that seeks to support its argument by relying on the incomplete portions of the record. Furthermore, we can see no basis in the record for the trial court to have reversed its original ruling, as there is nothing to indicate that Bedell opened the door to the 404(b) evidence. Ultimately, we conclude that in light of the trial court's ruling excluding the 404(b) evidence, defense counsel performed deficiently by failing to object to its admission and the trial court plainly

---

3. Bedell relies on the Utah Supreme Court's 1943 holding in *State v. Crank*, 105 Utah 332, 142 P.2d 178 (1943), in which it determined that the trial court could not permit the jury to consider a lesser included offense of manslaughter on a second degree murder charge because the statute of limitations had run. *See id.* at 193. However, Utah Code section 76-1-305, enacted in 1973, *see* Act of Mar. 8, 1973, ch. 196, 1973 Utah Laws 584, 589 (codified at Utah Code Ann. § 76-1-305 (2008)), supercedes this ruling.

erred by permitting the State to question the Detective regarding the 404(b) evidence. We also conclude that the admission of the 404(b) evidence was prejudicial because its exclusion was reasonably likely to have resulted in a more favorable outcome for Bedell.

A. We Will Not Assume that the Trial Court Reversed Its Original Ruling in the Absence of Record Evidence.

¶11    As a general rule, "record inadequacies result in an assumption of regularity on appeal," and "[w]here the record appears inadequate in any fashion, ambiguities or deficiencies resulting therefrom simply will be construed in favor of a finding that counsel performed effectively." *Litherland*, 2000 UT 76, ¶ 17. The purpose of this rule is to prevent an appellant from basing its argument on assertions that lack record support and which the appellate court therefore has no ability to evaluate. *See State v. Wulffenstein*, 657 P.2d 289, 293 (Utah 1982). However, the manner in which the State would have us employ the rule—to construe inadequacies in the record as demonstrating that an error did not occur where the bare record indicates that it did occur—would lead to precisely the situation the rule is intended to avoid.

¶12    In *State v. McClellan*, 2009 UT 50, 216 P.3d 956, the Utah Supreme Court reviewed a decision of this court in which we rejected a defendant's ineffective assistance claim due to the lack of an adequate record. *See id.* ¶¶ 1, 16. The defendant's ineffective assistance claim was based on his assertion that his counsel should have moved to disqualify the entire Utah County Attorney's office after discovering that his former counsel had accepted a job with that office. *See id.* ¶¶ 4, 14. Counsel's actions gave rise to a rebuttable presumption that "the entire prosecutor's office . . . [was] privy to the confidences obtained by the former defense lawyer," but the prosecutor could "rebut [such a] presumption by showing that effective screening procedures [were] used to isolate the defendant's former counsel from the prosecution of the substantially related criminal charges." *Id.* ¶ 19 (internal quotation marks omitted). The record in *McClellan* was unclear as to whether former counsel was in fact suitably screened. *See id.* ¶ 24. "Because a defendant bears the burden of ensuring an adequate record," this court had "construed the deficiencies in the record against [the defendant] and assume[d] that the prosecutor's office adequately rebutted the presumption of shared confidences." *Id.* (second alteration in original) (internal quotation marks omitted). The supreme court concluded that this approach was in error because once the presumption had been established, it became the State's burden to show that proper screening measures were taken, not the defendant's burden to show that they were not. *See id.* ¶¶ 24-25. Where

there was "no evidence of any attempt by the prosecutor to show that [former counsel] was effectively screened," the court concluded that the lack of evidence could not be construed against the defendant. *See id.* ¶ 25.

¶13 This court reached a similar conclusion in *State v. Wagenman*, 2003 UT App 146, 71 P.3d 184, where the defendant appealed the trial court's denial of her motion to dismiss on the ground that the trial court's postponement of her trial violated Utah's speedy trial statute. *See id.* ¶ 6. That statute "direct[ed] the court to dismiss criminal charges against a defendant if that defendant [was] not tried within 120 days of invoking [the statute], unless 'good cause [was] shown in open court.'" *Id.* ¶ 7 (quoting Utah Code Ann. § 77-29-1(3)-(4) (1999), *repealed by* Act of Feb. 14, 2007, ch. 14, § 1, 2007 Utah Laws 101). Because the record was inadequate for this court to review the trial court's good cause determination, *see id.* ¶ 16, the State asserted that we should reject the defendant's appeal. *See id.* ¶ 11 n.4. However, we determined instead that it was the State's burden to ensure an adequate record regarding whether the speedy trial statute was appropriately circumvented by a correct finding of good cause, and we reversed the trial court's ruling on the motion to dismiss. *See id.* ¶¶ 15-16.

¶14 Most often when we have addressed the consequences of an incomplete record on appeal, the defendant has asserted facts in his or her favor that cannot be demonstrated without the complete record. *See, e.g., State v. Cramer*, 2002 UT 9, ¶¶ 27-28, 44 P.3d 690 (rejecting a defendant's argument that the trial court erred in determining that a victim's medical records were not material to his defense where the medical records were not included in the record on appeal); *State v. Penman*, 964 P.2d 1157, 1162 (Utah Ct. App. 1998) (determining that the record on appeal was inadequate for the court to evaluate the reasons the defendant claimed his counsel was ineffective). But under the circumstances presented in *McClellan* and *Wagenman*, and indeed, in the case now before us, the facts cited by the defendant as demonstrating error were apparent in the complete portions of the record: in *McClellan*, it was clear that the defendant's former counsel joined the office of the county attorney prosecuting his case and thus a presumption of a conflict of interest arose, *see* 2009 UT 50, ¶ 4; in *Wagenman*, it was clear that the defendant had invoked her rights under the speedy trial statute and was therefore entitled to have a trial within 120 days, *see* 2003 UT App 146, ¶ 2; and here, the trial court made an express ruling excluding the 404(b) evidence, which became the law of the case and was never modified on the record, *see generally IHC Health Servs., Inc. v. D&K Mgmt., Inc.*, 2008 UT 73, ¶ 26, 196 P.3d 588 ("[U]nder the law of the case doctrine, a decision made on an issue during one stage of a case is binding in successive stages of the same litigation." (internal quotation marks omitted)). It was the

State's counter-arguments that were unsupported by the record—in *McClellan*, the record did not support the prosecution's assertion that appropriate screening measures had been undertaken; in *Wagenman*, the record did not demonstrate the trial court's basis for its finding of good cause; and here, the record does not show that the trial court reversed its ruling excluding the 404(b) evidence.

¶15    Yet the State asks that we construe record inadequacies in its favor and presume a lack of error. Such an approach is directly contrary to the reasoning behind our general rule that we construe record ambiguities and inadequacies against the party asserting error: "Absent [a] record, defendant's assignment of error stands as a unilateral allegation which the review court has no power to determine. *This [c]ourt simply cannot rule on a question which depends for its existence upon alleged facts unsupported by the record*." *Wulffenstein*, 657 P.2d at 293 (emphasis added). It seems to us that where the appellant's claim is supported by the record, the appellee's claim that the contrary result would be supported were it not for record inadequacies or ambiguities is "a unilateral allegation which the review court has no power to determine," *see id.* Thus, we conclude that an appellant is not required to ensure an adequate record regarding the other party's counter-arguments to the appellant's assertions on appeal, and we will not penalize an appellant for gaps in the record unless the appellant relies on the information contained in those gaps to support his or her argument on appeal. We therefore assume that because record evidence[4] does not support the State's argument that the trial court reversed its original ruling excluding the 404(b) evidence, that ruling remained in force throughout the trial.

---

4. The State points out the trial court's statement in its ruling on Bedell's motion for a new trial that "the Court concluded that [the Detective] could talk about other victims since the defense challenged the quality of his investigation." However, the motion for a new trial was decided by a different judge than the one who presided over the trial, and that judge was not privy to extra-record rulings that may have taken place. The second judge's conclusion that the court permitted the evidence is not supported by the record and appears to merely accept the State's assertion that the reversal of the court's original ruling excluding the 404(b) evidence could be inferred from the record. We therefore do not consider it to be record evidence that the 404(b) ruling was actually reversed.

B. There Was No Basis for the Trial Court to Reverse Its Original Ruling.

¶16    Even if we were inclined to accept the State's argument that the unrecorded bench conference could be inferred to have reversed the original ruling, there is little in the record to suggest why the trial court might have decided to reverse its ruling during the unrecorded bench conference.[5] The State suggested to the jury at trial that it was entitled to explore the 404(b) evidence because defense counsel, during cross-examination, had referenced the fact that Bedell was already being investigated at the time of the Complainant's disclosure.  Furthermore, the State asserts on appeal that the 404(b) evidence was needed to rebut Bedell's challenges to the Complainant's credibility and the thoroughness of the Detective's investigation.[6]  However, the trial court never reversed its decision respecting the 404(b) evidence on the ground that Bedell opened the door and, in any case, defense counsel did not raise anything materially different from what had already been alluded to by the State during direct examination. Moreover, the details of the prior allegations elicited by the State during redirect did little, if anything, to demonstrate the Complainant's credibility or the thoroughness of the investigation.[7]

¶17    In its direct examination of the Detective, the State alluded to the prior allegations by eliciting testimony that, while in jail and prior to reporting abuse, the Complainant had been informed by the Inmate of "an ongoing investigation with Dr. Bedell"; that the Detective was looking for specific markers in the Complainant's testimony that might indicate her veracity; that specific aspects of the Complainant's testimony conformed to the markers the Detective was looking for; that "these consistencies or markers" led the Detective to believe the Complainant to be credible;

---

5. Additionally, the fact that defense counsel was questioning the Detective regarding his investigation into the Inmate at the time the bench conference was requested, not questioning him about markers or his investigation of the prior allegations, detracts from the State's argument that we should infer that the bench conference related to the 404(b) evidence.

6. Bedell does not contest the propriety of using the 404(b) evidence for these purposes, so we assume without deciding that these purposes might have been proper under the circumstances.

7. Not to mention that Bedell never raised a medical purpose defense, the primary consideration the trial court suggested might induce it to reverse its ruling.

and that 90-95% of the investigation into Bedell was completed before the Complainant came forward with her allegations.  Defense counsel used this same information, already brought up by the State, to point out that the Complainant learned of the investigation from the Inmate prior to disclosing and that she could therefore have falsified her allegations.  He also suggested that the Detective's investigation was faulty because, having other complaining witnesses to rely on, he neglected to test the Complainant's veracity by seeking out and interviewing the Inmate.  In the process of this questioning, defense counsel referred to the existence of other allegations and the Detective elaborated on the relevance of the markers discussed during direct examination by explaining that he was looking for similarities between the Complainant's allegations and other allegations that had previously come up against Bedell.  The explicit use of the word "allegations," which the State avoided on direct examination by referring more benignly to an "investigation," appears to be the only difference between the information elicited on direct examination and that elicited on cross-examination and did not open the door to the State's exploring the details of the allegations on redirect.

¶18    Furthermore, general testimony regarding the ongoing investigation was more than sufficient to fulfill the State's alleged purposes of rebutting Bedell's challenges to the Complainant's credibility and demonstrating the thoroughness of the Detective's investigation.  There was nothing additional to be gained on these points by having the Detective testify regarding the details of the prior allegations.  On direct examination, the State had already elicited testimony that the Complainant's allegations contained many of the same markers as the other victims and even testimony regarding what many of those markers were; the specific details of each prior allegation did little, if anything, to bolster that testimony.  Similarly, the details did nothing to rebut Bedell's assertion that the Detective's investigation lacked thoroughness because that assertion was based primarily on the Detective's failure to seek out the Inmate.  In response, the Detective testified that he did not think such an investigation was important because he already had the markers to measure the Complainant's testimony against and because her case was only a small portion of his investigation.  We cannot see how it could have been necessary to also elicit the details of the prior allegations in order to show that the Detective's investigation was thorough.

¶19    For these reasons, it does not appear that Bedell opened the door to the 404(b) evidence or that it was needed for the purposes asserted by the State.  Thus, even if we were to accept the State's assertion that it would be appropriate to infer from the record that the trial court reversed its ruling regarding the 404(b) evidence in the unrecorded

bench conference, we do not think such an inference can reasonably be made or that such a ruling would have been appropriate under the circumstances.

C. The Admission of the 404(b) Evidence Was the Result of Ineffective Assistance of Counsel and Plain Error.

¶20    In light of the trial court's ruling excluding the 404(b) evidence and the lack of record evidence demonstrating that the ruling was reversed, we determine that Bedell received ineffective assistance of counsel at trial.  We can conceive of no strategic reason for Bedell's counsel not to object to the Detective's testimony on redirect regarding the 404(b) evidence, and the State has suggested none.  Given the trial court's 404(b) ruling and the prejudicial nature of the evidence, we conclude that counsel performed deficiently by failing to object.  Furthermore, in light of credibility issues with the Complainant's testimony and the fact that the jury acquitted Bedell of the felony charges even in the face of the 404(b) evidence, we conclude that there is a reasonable probability that Bedell would have been acquitted of the lesser included offense had the 404(b) evidence not been presented to the jury and that counsel's deficient performance was therefore prejudicial.

¶21    We also conclude that it was plain error for the trial court to permit the questioning without reconsidering its earlier ruling.  The pretrial ruling should have been treated as the law of the case unless and until it was changed by the trial court. *See IHC Health Servs., Inc. v. D&K Mgmt., Inc.*, 2008 UT 73, ¶¶ 26-27, 196 P.3d 588 (explaining that "under the law of the case doctrine, a decision made on an issue during one stage of a case is binding in successive stages of the same litigation" unless the trial court reconsiders that decision (internal quotation marks omitted)).  In light of its own ruling, the trial court's error in permitting the State's line of questioning regarding the specifics of the prior allegations should have been obvious, and as discussed above, the admission of the 404(b) evidence was prejudicial.  Thus, even without defense counsel's objection, the 404(b) evidence should not have been admitted by the trial court without a revision of its prior ruling.

CONCLUSION

¶22    Because we conclude that the lesser included offense charge was not erroneous, we cannot dismiss Bedell's case.  However, because we determine that Bedell received ineffective assistance of counsel and that it was plain error for the trial court to permit

the State to question the Detective regarding the 404(b) evidence, we reverse Bedell's conviction and remand for additional proceedings.

_____

James Z. Davis, Judge

-----

¶23    I CONCUR:

_____

Michele M. Christiansen, Judge

-----

THORNE, Judge (dissenting):

¶24    I respectfully dissent. I agree with the majority opinion that there was no error in allowing the jury to be instructed on the class A misdemeanor sexual battery charge. However, I disagree with the majority's conclusions that the 404(b) evidence was improperly admitted and that the admission of this evidence entitles Bedell to a new trial on grounds of plain error and ineffective assistance of counsel. *See generally* Utah R. Evid. 404(b) (governing the admission of evidence of prior crimes, wrongs, or bad acts). I would also reject Bedell's other arguments on appeal, either on their substance or as inadequately briefed. For these reasons, I would affirm Bedell's conviction below.

¶25    The crux of the majority's analysis is that Bedell had secured a pretrial ruling excluding from evidence nine prior allegations of sexual misconduct by Bedell against his female patients, that the district court never modified that ruling, and that both plain error and ineffective assistance of counsel occurred when the State was allowed to introduce the 404(b) evidence in the face of the unmodified pretrial ruling. My disagreement with the majority's analysis arises from Bedell's cross-examination of the Detective, which opened the door to evidence that would otherwise have been excluded under the district court's ruling. The district court's exclusion order expressly

provided, "The State may seek to resubmit some or all of the 404(b) evidence at trial, if [Bedell] 'opens the door' to the same." As this is exactly what happened, I see no plain error in the district court's failure to challenge, sua sponte, the Detective's 404(b) testimony. Further, Bedell's counsel's actions regarding the 404(b) evidence demonstrate a reasonable trial strategy and, as such, cannot constitute ineffective assistance of counsel.

¶26 "In order to demonstrate plain error, a defendant must establish that (1) the district court erred, (2) the error should have been obvious to the district court, and (3) the error was harmful." *State v. Brooks*, 2012 UT App 34, ¶ 14, 271 P.3d 831. Even assuming that admission of the 404(b) evidence was both erroneous and harmful, the error would not have been obvious to the district court in light of what had previously occurred during Bedell's cross-examination of the Detective. By the close of that cross-examination, Bedell's counsel had disclosed by his own statements or through elicited testimony that Bedell was facing a separate, presumably criminal, trial based on allegations of sexual misconduct by multiple other women and that the other allegations bore "very, very common" markers or similarities to the Complainant's allegations in this case.[1]

¶27 Bedell's cross-examination of the Detective clearly opened the door regarding the other allegations of sexual misconduct. *See generally State v. Lopez*, 626 P.2d 483, 485 (Utah 1981) ("[I]f the defendant himself opens up the subject as to prior incidents, [his testimony] becomes subject to cross-examination and refutation the same as any other evidence."); *Butterfield v. Cook*, 817 P.2d 333, 338 (Utah Ct. App. 1991) (explaining that once evidence is properly presented, counsel for both sides may fully explore the evidence, inferences, and deductions arising therefrom). Therefore, under the plain terms of the exclusion order, the State was entitled to "seek to resubmit some or all of the 404(b) evidence," which it did by eliciting further 404(b) testimony with no objection from Bedell. Bedell's failure to object to the redirect testimony after eliciting similar testimony on cross-examination would have strongly suggested to the district court that Bedell recognized that the 404(b) evidence was no longer excluded due to his choice to open the door to that evidence. While Bedell could certainly have objected to the

---

1. The Detective also testified on cross-examination, "[T]he similarities between [Complainant's statement] and the other complaining witnesses in this matter are—how do you say it? They—they bring—they bring a person to a conclusion that she's telling the truth."

Detective's redirect testimony on the grounds that it exceeded the width of the opened door, any such argument would not have been obvious to the district court and thus cannot serve as the basis for a finding of plain error.[2]

¶28    Bedell's ineffective assistance of counsel claim also must fail because there were sound strategic reasons for allowing the prior accusation testimony to come in. *See generally State v. Dunn*, 850 P.2d 1201, 1225 (Utah 1993) ("[I]f the challenged act or omission might be considered sound trial strategy, we will not find that it demonstrates inadequacy of counsel."). Bedell attempted to use the 404(b) evidence to his advantage in two distinct ways. First, he used the evidence to suggest that the Detective had uncritically accepted Complainant's allegations because he was already convinced that Bedell had a history of sexual misconduct against his patients. But more importantly, Bedell used the fact that the Complainant *knew* of the prior allegations to suggest that she was engaging in copycat behavior, accusing Bedell of misbehavior because she knew that he was already being accused by others.[3] While neither of these strategies is

---

2. The Detective went into substantially greater detail about the prior accusations on redirect than he had on cross-examination. It is possible that Bedell could still have excluded some of these details upon further objection and argument, but the inadmissibility of the details is not so obvious that the district court committed plain error in allowing them to come in.

3. In closing argument, Bedell's counsel made the following statement regarding the Complainant's interactions with the Inmate, another alleged victim of Bedell's who the Complainant had met in jail:

> [The Complainant] says in her written statement here on page 15, that she said, referring to [the Inmate], that something similar had happened to her. Well, [the Inmate] came, and she—I didn't hear her say that she had been sexually assaulted by anybody. What she did say, however, was very similar language to the language that [the Complainant] used. And that is, "You look younger than your age." I asked [the Inmate], "Did you tell that to [the Complainant] when you guys were talking at the jail?["] I mean that's exactly what she's saying that Dr. Bedell said to her . . . . And she says, "I might have."

(continued...)

without risk, they are not so inherently unsound as to constitute ineffective assistance of counsel. *See State v. Kooyman*, 2005 UT App 222, ¶ 43, 112 P.3d 1252 ("[I]n the event that we conclude that counsel's decision amounted to reasonable trial strategy or tactics, regardless of the outcome, counsel's decision will not qualify as ineffective assistance.").

¶29    For these reasons, I cannot agree with the majority opinion that either plain error or ineffective assistance of counsel occurred in this case as regards the 404(b) evidence. I would also reject Bedell's other claims of error on appeal. Accordingly, I would affirm Bedell's conviction, and I respectfully dissent from the majority opinion's reversal of that conviction.

_____

William A. Thorne Jr., Judge

_____

3. (...continued)

"You look pretty." That's another concept that [the Complainant] says that Dr. Bedell did that was inappropriate, that's exactly what [the Inmate] said.

And then the concept, he made me feel dirty, like I wanted to wash my hands after visits. And that concept of feeling dirty is exactly the concept that's conveyed by [the Complainant] to [the Detective] in her interview, and she's kept that dirty theme through her testimony before us here.

[The Complainant] tells us that [the Inmate] explained what was going on regarding Dr. Bedell and he was being investigated. [The Inmate] said that they were discussing what they have read in the paper about—what they have read in the papers. What does that suggest? Not earth shattering stuff, but it does suggest that [the Complainant] was talking to [the Inmate] about what's been in the paper about Dr. Bedell. There's nothing wrong with that, it's in the paper, everybody could read it. But when [the Complainant] gets with [the Detective], she minimizes that concept with [the Detective].