**AMENDED OPINION\***

*This opinion is subject to revision before
publication in the Pacific Reporter*

**2014 UT 1**

IN THE

SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Plaintiff and Petitioner,*

*v.*

RAYMOND L. BEDELL,
*Defendant and Respondent.*

No. 20120692
Filed January 24, 2014

On Certiorari to the Utah Court of Appeals

First District, Logan Dep't
The Honorable Thomas Willmore
No. 061100879

Sean D. Reyes, Att'y Gen., Marian Decker, Asst. Att'y Gen.,
Salt Lake City, for petitioner

Kenneth E. Lyon Jr., Pocatello, ID, for respondent

ASSOCIATE CHIEF JUSTICE NEHRING authored the opinion of the
Court, in which CHIEF JUSTICE DURRANT, JUSTICE DURHAM,
JUSTICE PARRISH, and JUSTICE LEE joined.

ASSOCIATE CHIEF JUSTICE NEHRING, opinion of the Court:

**INTRODUCTION**

¶ 1   The State challenges the Utah Court of Appeals' reversal
of defendant Dr. Raymond Bedell's conviction of misdemeanor
sexual battery.  The State asserts that a panel majority of the court
of appeals erred when it reversed Dr. Bedell's conviction on the
basis of ineffective assistance of counsel and plain error on the

---

\* The court is remanding to the Court of Appeals to address an
additional argument that was not presented to this court.  See
paragraphs 1, 16, 17, 19, 27.

part of the district court. Because of the manner in which we resolve this case, we do not address the State's argument that a gap in the record of a criminal trial should always be interpreted in favor of the State. We reverse the decision of the court of appeals, vacate that opinion, and remand to the court of appeals to address Dr. Bedell's argument that the trial court should have granted a new trial based on newly discovered evidence.

## BACKGROUND

¶ 2   On October 1, 2003, S.B. first consulted Dr. Bedell about chronic knee and ankle pain. Dr. Bedell was a physician specializing in pain management. According to S.B., during this initial visit Dr. Bedell fondled her breasts for several minutes, made inappropriate comments, asked what medication she wanted, and prescribed what she requested. S.B. also claims that Dr. Bedell made additional inappropriate comments to her at a later visit and pressed his erect penis into her leg.

¶ 3   S.B. continued to see Dr. Bedell and receive prescriptions from him over a three-month period from October 2003 to January 2004. Dr. Bedell prescribed her thirty days of narcotics at each visit. S.B. was not following dosage instructions. S.B. would finish the thirty-day prescription within a week and would call Dr. Bedell's office for another. There was "[n]ot a doubt in [S.B.'s] mind" that Dr. Bedell knew that she was not following dosage instructions. Dr. Bedell eventually terminated S.B. as a patient. She claimed it was because she would not have sex with him. S.B. continued to abuse prescription medication after she stopped seeing Dr. Bedell.

¶ 4   In September 2006, Cache County charged S.B. with four counts of fraudulently obtaining a controlled substance, a third-degree felony. She openly admitted to the investigating officer that she was addicted to prescription painkillers and that she was violating the terms of the probation she was still under. As a result, S.B. was arrested and jailed. While in jail, S.B. met another inmate, and in the course of conversation, discovered that they were both "pill poppers." The inmate told S.B. about allegations of sexual abuse against Dr. Bedell that had been reported in the local paper. S.B. told the inmate that she believed that Dr. Bedell had also touched her inappropriately. The inmate encouraged S.B. to report the abuse.

¶ 5 S.B. reported that Dr. Bedell had touched her inappropriately, and a detective from the Logan City Police Department investigated. The detective "made it absolutely clear in the interview" that no promises were made to S.B. and "there were going to be no promises made to her by [the detective] or by the county attorney, and that what she was about to say was to [have no effect] on her charges." Dr. Bedell was charged with two counts of forcible sexual abuse, a second-degree felony, as a result of S.B.'s allegations.

¶ 6 Before trial, the State moved to admit evidence of other sexual misconduct allegations against Dr. Bedell by nine other women, including six former patients. The district court ruled after argument that the evidence was admissible under Utah Rules of Evidence 402 and 404(b), but that it was inadmissible under a rule 403 balancing. The court informed the prosecution that it could "resubmit some or all of the 404(b) evidence at trial, if Defendant 'opens the door' to the same."

¶ 7 In his opening statement at trial, defense counsel asserted that S.B. brought her allegations only after learning from the other jail inmate that Dr. Bedell was being investigated, and that S.B. hoped to use her accusation against Dr. Bedell to gain favorable treatment in her own case:

> [A]ccording to her, she's in jail and an inmate there starts talking to her about Dr. Bedell, supposedly. Somehow Dr. Bedell just comes up. And supposedly, according to [S.B.], this inmate tells her that Dr. Bedell is being investigated for allegations of sexual impropriety against patients. And that he's looking for witnesses, good looking women witnesses is what [S.B.] says. And so [S.B.] calls the police or gets in touch with the police.

Counsel continued to question the investigation, claiming that the investigating detective "didn't do virtually anything to investigate [S.B.], her background, review her probation file, nothing. This is a case boiling down to—because there was already an investigation going on, the fact that [S.B.] made allegations against Dr. Bedell was enough. That was it." The defense concluded its opening statement by stating that S.B. had fabricated the allegations while in jail in order to receive favorable treatment in

her case, saying, "It's not about Dr. Bedell sexually assaulting [S.B.] because he did not."

¶ 8   The prosecution then called the investigating detective. The prosecutor referenced the defense's opening statement and elicited testimony from the detective about how S.B. had come to learn about the ongoing investigation of Dr. Bedell. The prosecutor clarified that the detective had informed S.B. that she would not receive immunity of any kind in exchange for her testimony.   The detective stated that S.B. "knew things, these consistencies or markers that . . . gave her credibility . . . and . . . led me to believe that the touching had occurred."

¶ 9   During his cross-examination of the detective, defense counsel continued to disparage the State's investigation into S.B.'s claims.   While the defense was asking the detective why he had not asked S.B. for the name of the inmate who informed her of the investigation or where that conversation occurred, the prosecutor asked to approach the bench, saying, "I think something needs to be said here."   The ensuing bench conference was not recorded.

¶ 10   After the conference, defense counsel resumed his cross-examination of the detective and continued to challenge S.B.'s credibility and the investigation.   Counsel asked the detective if he did not thoroughly investigate the allegations made by S.B. "because you had those other allegations and you had done all that work of investigation."   The detective stated that Dr. Bedell's other accusers shared "certain markers or similarities between those allegations that are very, very common with this case," and that when he interviewed S.B., "she started to hit those markers that all the others had."   The detective explained that the common markers in S.B.'s story "bring a person to a conclusion that she's telling the truth."

¶ 11   Without objection by defense counsel, the prosecutor then elicited testimony during redirect examination of the detective that there had been an investigation into six other allegations of sexual misconduct against Dr. Bedell by former female patients.   The women all reported similar incidents: Dr. Bedell abused each victim on their first visit while he was alone with them, he made similar comments to the women who were of similar ages, and he prescribed narcotics for each.

¶ 12 Later in the proceedings, while discussing jury instructions outside the presence of the jury, the prosecution

requested a limiting instruction for the evidence related to the other allegations against Dr. Bedell. The prosecutor asked that the court instruct the jury that evidence of other sexual misconduct by Dr. Bedell "is solely for the purpose of testing whether [S.B.] could have created the story" so "that the jury will understand clearly that they are not deciding the truth of the other allegation[s]." Defense counsel stated that he had no objection. After the court expressed some concern, the prosecutor said he would discuss the instruction in his closing argument to explain that the other sexual misconduct evidence was presented "to respond to the defendant's strategy of claiming that [S.B.] ginned up this story or fabricated it." The court replied, "I think that's appropriate." Defense counsel did not object to the prosecutor's proposed argument.

¶ 13 In his closing statement, the prosecutor explained the purpose of the evidence of other allegations of sexual misconduct by Dr. Bedell that had been elicited during his redirect examination of the investigating detective. The prosecutor told the jury,

> There was testimony in this case that there are similar allegations, and [Dr. Bedell's] own lawyer talked about the fact that there will be a jury trial on that later. You can't use what you don't know about to convict a man. You can't do that. This case is about [S.B.]. There's a reason why we have been allowed to refer to those other cases. If you will think back, I didn't bring them up. During the opening argument, it became clear that the argument would be that [S.B.] created this story, that she dreamed it up in order to get herself out of jail.

> Part of the defendant's theory required them to tell you that there were already other stories out there about Dr. Bedell. You will recall I didn't bring that up. That was a strategic decision made by the defendant. But once he started talking about those other investigations, I was allowed to produce the evidence that showed there were . . . some hidden markers that nobody knew about that

> made it clear that she could not have made up her story. That's the purpose why those other bad acts are referred to here. And it's the only purpose.

The prosecutor directed the jury's attention to the corresponding limiting instruction and stated that it referred to "the evidence of the other bad acts." The prosecutor explained that the jury could consider the evidence "for the purpose of judging the police investigation, and . . . for the credibility of any witness. Principally for the purpose of judging the credibility of [S.B.]. For the purpose of deciding whether she fabricated the story. That's why the evidence is there." The prosecutor admonished the jury not to consider the evidence "for the purpose of whether the defendant's a bad guy and you ought to string him up on this charge or that. . . . That's what it means, a limited purpose. Treat him fairly."

¶ 14 In his closing argument to the jury, defense counsel alleged that the investigating detective had discussed the allegations of the other women with S.B., thereby tainting her report. Counsel said, "I mean, why not let the witness tell their story, and then ask for clarification, if necessary and when necessary," and contended that "the person hearing that information very easily can assimilate the notion that something should've happened or did happen on the first visit." He described the case as coming down to "whether or not someone that knew of Dr. Bedell's plight would use that to their own advantage when nothing happened to them. That's what you have to decide. She knew he was being prosecuted."

¶ 15 The jury acquitted Dr. Bedell of the two charged felonies, but convicted him of the lesser-included misdemeanor of sexual battery. The district court imposed a 365-day jail term, of which 359 days were suspended, assessed a fine, 120 hours of community service, and three years of probation. Dr. Bedell filed a motion for a new trial, which was denied.

¶ 16 Dr. Bedell appealed to the Utah Court of Appeals. He argued that the district court committed plain error and his trial counsel was ineffective in allowing the investigating detective's testimony on redirect examination about other allegations of

sexual misconduct against him (the 404(b) evidence). [1] Dr. Bedell also argued that the trial court should have granted a new trial based on newly discovered evidence.[2] The State argued that Dr. Bedell's basis for appeal presupposed that the district court's pretrial ruling excluding the 404(b) evidence did not change during the course of the trial. The State alleged that the record supported an inference that the court revised its pretrial ruling during the unrecorded bench conference.[3] The State further contended that the court of appeals "should construe the lack of record evidence regarding what happened during the bench conference against [Dr.] Bedell by assuming the regularity of the proceedings, i.e., by assuming that the district court's failure to exclude the evidence was appropriate and supported by an off-the-record reversal of its original ruling."[4]

¶ 17 A panel majority of the court of appeals reversed and remanded for a new trial.[5] The majority refused to apply the presumption of regularity in favor of the State because it was "the State, not [Dr.] Bedell, that [sought] to support its argument by relying on the incomplete portions of the record."[6] The majority determined there was "no basis in the record for the trial court to have reversed its original ruling, as there is nothing to indicate that [Dr.] Bedell opened the door to the 404(b) evidence."[7] The

---

[1] *State v. Bedell*, 2012 UT App 171, ¶ 7, 281 P.3d 271.

[2] *Id.* ¶ 7 n.2.

[3] *Id.* ¶ 10.

[4] *Id.*

[5] *Id.* ¶¶ 22–23 (Judge Davis authored the opinion, in which Judge Christiansen concurred). Dr. Bedell also argued to the court of appeals that it was error on the part of the district court and his counsel "to allow the lesser included class A misdemeanor charge for sexual battery to appear on the verdict form because the statute of limitations on that charge was two years . . . and [S.B.] did not contact the police until three years after the alleged abuse took place." *Id.* ¶ 9. The court of appeals' panel agreed that was not error. *Id.* That issue is not before us on certiorari review.

[6] *Id.* ¶ 10.

[7] *Id.*

majority accordingly held that the district court plainly erred and counsel rendered ineffective assistance in allowing the 404(b) evidence.[8]  Because the panel majority held "the 404(b) evidence was improperly elicited" and remanded on that ground, Dr. Bedell's argument seeking a new trial based on newly discovered evidence was not addressed.[9]

¶ 18 Judge Thorne dissented.[10]  He determined that the defense's cross-examination of the investigating detective "clearly opened the door regarding the other allegations of sexual misconduct."[11]  Judge Thorne also argued that Dr. Bedell's counsel was not ineffective "because there were sound strategic reasons for allowing the prior accusation testimony to come in."[12] Judge Thorne concluded that "[Dr.] Bedell attempted to use the 404(b) evidence to his advantage in two distinct ways," first, to suggest the detective "had uncritically accepted [S.B.]'s allegations," and second, "to suggest that [S.B.] was engaging in copycat behavior, accusing [Dr.] Bedell of misbehavior because she knew that he was already being accused by others."[13]  As a result, Judge Thorne stated that he "would affirm [Dr.] Bedell's conviction."[14]

¶ 19  The State petitioned this court for certiorari.  We granted certiorari on two issues.  First, whether the panel majority of the court of appeals erred when it held the district court committed plain error and that Dr. Bedell's counsel was ineffective.  Second, whether the panel majority of the court of appeals erred in its construction and application of the general rule that record inadequacies result in an assumption of regularity on appeal.  We have jurisdiction pursuant to Utah Code section 78A-3-102(5).

---

[8] *Id.* ¶¶ 10–22.

[9] *Id.* ¶ 7 n.2.

[10] *Id.* ¶¶ 24–29 (Thorne, J., dissenting).

[11] *Id.* ¶ 27.

[12] *Id.* ¶ 28.

[13] *Id.*

[14] *Id.* ¶ 29.

**STANDARDS OF REVIEW**

¶ 20 On certiorari, we review the decision of the court of appeals for correctness.[15] A claim of ineffective assistance of counsel "raised for the first time on appeal presents a question of law."[16] "To prevail [on a claim of ineffective assistance of counsel], a defendant must show, first, that his counsel rendered a deficient performance in some demonstrable manner, which performance fell below an objective standard of reasonable professional judgment and, second, that counsel's performance prejudiced the defendant."[17] To prevail on a claim of plain error, it must be shown that "(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant, or phrased differently, our confidence in the verdict is undermined."[18] "If any one of these requirements is not met, plain error is not established."[19] Dr. Bedell bears the burden of establishing both claims.[20]

**ANALYSIS**

I. DR. BEDELL'S COUNSEL CHOSE TO USE THE 404(b)
EVIDENCE AND THEREFORE DID NOT RENDER
INEFFECTIVE ASSISTANCE BY NOT OBJECTING
TO THE STATE'S USE OF THE EVIDENCE

¶ 21 During his opening statement in Dr. Bedell's trial, defense counsel acknowledged that there were other allegations against Dr. Bedell. Counsel used those allegations to argue that the State had not thoroughly investigated S.B.'s claims "because there was already an investigation going on." Defense counsel established a theme that S.B. had limited credibility and had only reported her claims after she learned of an ongoing investigation,

---

[15] *State v. Levin*, 2006 UT 50, ¶ 15, 144 P.3d 1096.

[16] *State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162.

[17] *State v. Arguelles*, 921 P.2d 439, 441 (Utah 1996) (alteration in original) (internal quotation marks omitted).

[18] *State v. Dunn*, 850 P.2d 1201, 1208–09 (Utah 1993).

[19] *Id.* at 1209.

[20] *State v. Litherland*, 2000 UT 76, ¶ 8, 12 P.3d 92.

in hopes that her claims would lead to favorable treatment in her own criminal case.

¶ 22   The prosecution then responded to the allegations made by defense counsel by eliciting information from the investigating detective during his direct examination.   The detective testified that he believed S.B. because she knew nonpublic information that mirrored the claims made by the other women.   Defense counsel did not object to this testimony.   During defense counsel's cross-examination of the detective, he further developed his defense theory by openly questioning the thoroughness of the investigation into S.B.'s claims against Dr. Bedell.   It was during this cross-examination that the prosecutor asked to approach the bench, saying, "I think something needs to be said here."   After that bench conference, and throughout the remainder of the trial, defense counsel continued to argue his theory to the jury and did not object to the prosecution's use of the evidence of other allegations against Dr. Bedell.   Defense counsel assented to the prosecution's request for an instruction limiting the use of the evidence and did not object during the State's closing argument when the prosecutor explained the purpose of the evidence.   The defense then reiterated during its closing argument the theme that S.B.'s claims were unsubstantiated and the State's investigation was inadequate, and that S.B. manipulated her knowledge of the other allegations to try to gain a favorable outcome in her own proceedings.

¶ 23   To prevail on a claim of ineffective assistance, Dr. Bedell must demonstrate "that counsel's performance was deficient, in that it fell below an objective standard of reasonable professional judgment," and "that counsel's deficient performance was prejudicial—i.e., that it affected the outcome of the case."[21]   In addition, we give wide latitude to trial counsel to make tactical decisions and "will not question such decisions unless there is no reasonable basis supporting them."[22]

---

[21] *State v. Litherland*, 2000 UT 76, ¶ 19, 12 P.3d 92 (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)).

[22] *State v. Crosby*, 927 P.2d 638, 644 (Utah 1996); *see also Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential.   It is all too tempting for a defendant to second-guess counsel's assistance after conviction

¶ 24 Even without conjecturing whether the district court revised its earlier 404(b) ruling during the unrecorded bench conference (as the State asks us to do), the record as it exists supports the conclusion that defense counsel made an affirmative decision from the outset to utilize the 404(b) evidence to attack the State's case and S.B.'s credibility. This was particularly evident during the defense's cross-examination of the investigating detective, wherein counsel asked the detective about the other allegations against Dr. Bedell. Once this occurred, the State was permitted to use the 404(b) evidence to refute the defense theory[23] and to rebut the defense's allegation of fabrication.[24] This would explain defense counsel's decision to not object to the State's use of the same evidence to defend against Dr. Bedell's invocation of the evidence.[25] Further, the defense's strategy was likely effective, as Dr. Bedell was acquitted of the more serious charges and convicted of only the lesser-included misdemeanor.[26]

---

or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.").

[23] *See State v. Lopez*, 626 P.2d 483, 485 (Utah 1981) ("[I]f the defendant himself opens up the subject as to prior incidents, it becomes subject to cross-examination and refutation the same way as any other evidence.").

[24] *See State v. Verde*, 2012 UT 60, ¶ 47, 296 P.3d 673 ("In some circumstances, evidence of prior misconduct can be relevant under the so-called 'doctrine of chances.' This doctrine defines circumstances where prior bad acts can properly be used to rebut a charge of fabrication. It is a theory of logical relevance that 'rests on the objective improbability of the same rare misfortune befalling one individual over and over.' Under this analysis, the State suggests that evidence of past misconduct may 'tend [ ] to corroborate on a probability theory' that a witness to a charged crime has not fabricated testimony, because it is '[un]likely . . . that [several] independent witnesses would . . . concoct similar accusations.'" (alterations in original) (citation omitted)).

[25] *See State v. Kelley*, 2000 UT 41, ¶ 26, 1 P.3d 546 ("Failure to raise futile objections does not constitute ineffective assistance of counsel.").

[26] *See State v. Arguelles*, 921 P.2d 439, 441 (Utah 1996) ("To show

¶ 25  For these reasons, we disagree with the majority decision of the court of appeals, which could "see no basis in the record for the trial court to have reversed its original ruling, as there [was] nothing to indicate that [Dr.] Bedell opened the door to the 404(b) evidence."[27]  We agree with Judge Thorne's dissenting opinion that "[Dr.] Bedell attempted to use the 404(b) evidence to his advantage in two distinct ways":  as a means to attack the State's investigation and to suggest that S.B. "was engaging in copycat behavior, accusing [Dr.] Bedell of misbehavior because she knew that he was already being accused by others."[28]  Therefore, because there was a legitimate strategic decision for Dr. Bedell's counsel to use the 404(b) evidence and his use of that evidence allowed the State to similarly make use of the evidence, his ineffective assistance of counsel claim must fail.[29]

## II. THE DISTRICT COURT DID NOT COMMIT PLAIN ERROR BY NOT  INTERVENING ON ITS OWN INITIATIVE TO FORECLOSE THE STATE FROM UTILIZING THE 404(b) EVIDENCE

¶ 26  In light of the court's pretrial ruling that the State could "resubmit some or all of the 404(b) evidence at trial . . . if [Dr. Bedell] 'open[ed] the door' to the same," the court did not commit plain error by allowing the evidence to come in at trial. A district court is "not required to constantly survey or second-guess [a] nonobjecting party's best interests or trial strategy" and

---

prejudice under the second prong of the *Strickland* test, a defendant must proffer sufficient evidence to support a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different." (internal quotation marks omitted)).

[27] *State v. Bedell*, 2012 UT App 171, ¶ 10, 281 P.3d 271.

[28] *Id.* ¶ 28.

[29] *See State v. Kooyman*, 2005 UT App 222, ¶ 43, 112 P.3d 1252 ("[I]n the event that we conclude that counsel's decision amounted to reasonable trial strategy or tactics, regardless of the outcome, counsel's decision will not qualify as ineffective assistance."); *State v. Dunn*, 850 P.2d 1201, 1225 (Utah 1993) ("[I]f the challenged act or omission might be considered sound trial strategy, we will not find that it demonstrates inadequacy of counsel.").

is not expected to intervene in the proceedings unless the evidence "would serve no conceivable strategic purpose."[30] Further, the court should take measures to avoid interfering with potential legal strategy or creating an impression of a lack of neutrality.[31] Plain error does not exist when a "'conceivable strategic purpose'" exists to support the use of the evidence.[32] Therefore, because defense counsel was not ineffective for failing to object to the State's use of the 404(b) evidence, there was no plain error on the part of the district court in not intervening to foreclose the State's use of the evidence.

## CONCLUSION

¶ 27 Based on the record as it exists before us, we conclude that Dr. Bedell's trial counsel was not ineffective in referencing and admitting the 404(b) evidence. And the district court did not commit plain error in allowing the evidence to be presented. Defense counsel strategically utilized that evidence as a basis for the defense's theory that S.B. was not a credible witness and that the State had not conducted an adequate investigation because there were other charges already pending against Dr. Bedell. The court did not err in allowing the State to rebut the defense's theory by placing the defense's contentions in context. Accordingly, we reverse the decision of the court of appeals,

---

[30] *State v. Labrum*, 925 P.2d 937, 939 (Utah 1996); *see also State v. Hall*, 946 P.2d 712, 716 (Utah Ct. App. 1997) ("We . . . will decline to consider a defendant's plain-error arguments if the alleged errors reasonably resulted from defense counsel's conscious decision to refrain from objecting, or if defense counsel led the trial court into error." (internal quotation marks omitted)).

[31] *State v. Beck*, 2007 UT 60, ¶ 16, 165 P.3d 1225 ("Impartiality, both perceived and actual, is of particular importance in a criminal case before a jury."); *State v. Brown*, 948 P.2d 337, 343 (Utah 1997) ("Circumstances like these are precisely why courts are not required to constantly survey or second-guess the nonobjecting party's best interests or trial strategy. If trial counsel intentionally fails to object, the trial judge is put in the untenable position of deciding whether to intervene and potentially interfere with trial counsel's strategy or face review for plain error." (internal quotation marks omitted)).

[32] *Hall*, 946 P.2d at 716 (quoting *Labrum*, 925 P.2d at 939).

vacate that opinion,[33] and remand to the court of appeals to address Dr. Bedell's argument that the trial court should have granted a new trial based on newly discovered evidence.

––––––––––

[33] In doing so, we decline to rule on the State's argument that a record gap should be interpreted in favor of the State.