2009 UT 50

**STATE of Utah, Plaintiff and Respondent,**

v.

**Carl McCLELLAN, Defendant and Petitioner.**

No. 20080350.

Supreme Court of Utah.

July 31, 2009.

Mark L. Shurtleff, Att'y Gen., Marian Decker, Asst. Att'y Gen., Salt Lake City, for respondent.

Margaret P. Lindsay, Spanish Fork, for petitioner.

WILKINS, Justice:

## INTRODUCTION

¶ 1 This court granted certiorari on the following issues: (1) Whether the court of appeals erred in its assessment of defendant Carl McClellan's contention of plain error and ineffective assistance of counsel to sup-

port his argument that the Utah County Attorney's Office should have been disqualified by the association of his former defense counsel, and (2) Whether the court of appeals erred in its assessment of Defendant's claim of error as to the State's presentation of an audio recording as rebuttal evidence. We affirm in part and reverse in part.

## BACKGROUND

¶ 2 This appeal stems from McClellan's conviction for first-degree rape. The rape occurred on July 5, 1988, when McClellan stopped at the victim's house while selling cleaning supplies door-to-door in her American Fork neighborhood. He visited the victim's house twice during the day, once between 1:00 and 1:30 p.m. and then again around 4:00 p.m. The rape took place during the first visit. The victim reported the rape to police that evening and McClellan was arrested three days later.

¶ 3 During interrogation by police officers, McClellan stated that he had been to the victim's house only once. When the officers challenged this statement, McClellan admitted to lying and confirmed that he had in fact been there twice. Unbeknownst to McClellan, this police interview was recorded.

¶ 4 Phil Hadfield undertook McClellan's representation and appeared with him at his preliminary hearing and arraignment. Trial was set for August 2, 1988, then continued to August 29, 1988. Three days before the scheduled trial, McClellan appeared for a hearing on a defense motion for a second continuance. At that time, McClellan learned that Hadfield had left private practice and had accepted employment with the Utah County Attorney's Office—the entity that was conducting McClellan's prosecution. Hadfield neither told McClellan of his new employment nor sought the permission of the trial court to withdraw from representation. Newly appointed defense counsel James Rupper sought this second continuance in order to be able to provide his client adequate representation at trial. However, when McClellan learned a continuance would require him to waive his constitutional right to a speedy trial, he refused, and the trial proceeded as scheduled.

¶ 5 At trial, McClellan testified that he had never told police officers that he had been to the victim's house only once. When asked on cross-examination if he would change his testimony if he knew that there was a tape recording of the interview, he indicated that he would not. The interviewing officer then testified that McClellan had admitted to lying during the interview, and disclosed for the first time that the interview had been taped. The prosecution sought to play the contradictory portion of the taped interview, to which McClellan's counsel objected on the grounds that the defense had not been given a copy of the tape or even notified of its existence.

¶ 6 McClellan was allowed to listen to the tape overnight. The defense objected again the next morning, asserting a violation of McClellan's *Miranda* rights and unfair surprise. All objections were overruled and the court allowed the admission of the tape for rebuttal purposes. Portions were then played for the jury, but the audio was not transcribed as part of the record. On surrebuttal, McClellan testified that he had been nervous during his testimony the previous day and that the tape accurately reflected the interview. McClellan was convicted as charged and sentenced to an indeterminate term of five years to life.

¶ 7 Following sentencing, the defense filed a motion for a new trial. In denying the motion, the judge held that admission of the tape was proper because "the defense had essentially the same notice of the existence of the recording as the prosecution," and therefore, "its introduction was not prejudicial."

¶ 8 On October 3, 1988, the trial court received a letter from McClellan requesting a rehearing, alleging improprieties in his trial and sentencing, including the introduction of the taped interview and the representation of his counsel. The trial court treated this letter as a motion for a new trial and Rupper filed a formal memorandum in support of the motion. An evidentiary hearing was held in which both McClellan and Hadfield testified. The trial court denied McClellan's motion for a new trial, holding again that introduction of the tape was not prejudicial because both McClellan and the prosecution had the same

notice of the existence of the tape, and holding that McClellan's dissatisfaction with his representation was founded on the limited time that Rupper had to prepare for trial, which could have been cured by McClellan's acceptance of the continuance his counsel proposed. No record of this hearing survives.

¶ 9 McClellan filed a notice of appeal on February 27, 1989. On July 12, 1990, Rupper withdrew as appellate counsel. He was replaced by Kent O. Willis, who was in turn replaced by Don Elkins on August 14, 1991. The appellate court was not provided with a complete transcript of McClellan's trial until November 1991, thirty-two months after the notice of appeal was filed. The appeal was ultimately dismissed two months later, in January 1992, for failure of McClellan's counsel to file a brief.

¶ 10 Meanwhile, in October 1991, McClellan, acting pro se, had filed a Petition for Writ of Habeas Corpus, seeking vacation of his conviction and a new trial. Defense counsel Steven J. Aeschbacher was appointed to represent him in these proceedings. Ultimately, this petition was dismissed by the district court as untimely. McClellan appealed, and the court of appeals reversed on constitutional grounds and remanded for consideration of the substantive claims.[1]

¶ 11 Thereafter, Aeschbacher entered into a stipulation with the State to allow McClellan to be resentenced *nunc pro tunc* to facilitate his direct appeal. An order to this effect was issued on May 24, 1994. However, the record does not indicate that this order was ever filed.

¶ 12 Two years later, in June 1996, the district court issued a Notice of Intent to Dispose of Exhibits and Orders, advising the parties of its intent to dispose of the exhibits in McClellan's file unless a written objection was filed. McClellan had no counsel of record at that time and was not notified personally. No objection was filed, and the exhibits, including the audio tape of McClellan's interview, were presumably destroyed.

¶ 13 For nearly ten years, McClellan remained unaware he had been resentenced and was once again able to exercise his right to appeal his conviction of sixteen years earlier. McClellan was not made aware of the resentencing order until the spring of 2004 when he and his family finally contacted Aeschbacher's former firm. He sought to have the order enforced in July 2004, at which time the Utah County Public Defender Association was appointed to represent him.

¶ 14 Resentencing finally occurred more than a year later, in October 2005. The district court reimposed McClellan's original sentence and denied all his post-trial motions. McClellan timely appealed, claiming that he was provided ineffective assistance of counsel because Rupper did not move to disqualify the entire Utah County Attorney's office and claiming that the trial court erred by admitting the recording of his interrogation. *State v. McClellan*, 2008 UT App 48, ¶¶ 10, 12, 179 P.3d 825.

¶ 15 While the appeal was pending, in December 2006, McClellan filed a motion for remand under rule 23B of the Utah Rules of Appellate Procedure to develop a record in support of his allegations of ineffective assistance of counsel. The court of appeals denied this motion on the grounds that it was based largely on the assertion of facts already of record and because it failed to set forth any nonspeculative facts that established ineffective assistance and resulting prejudice.

¶ 16 The court of appeals subsequently denied both of McClellan's claims on appeal, affirming his conviction. It held that while a presumption arises that all prosecutors have been exposed to confidential information when former defense counsel joins a prosecutor's office, that presumption can be rebutted by a showing that the former defense counsel has been effectively screened from the ongoing prosecution. In McClellan's case, there was no evidence in the record that Hadfield either had or had not been screened; therefore, the court of appeals assumed that "the prosecutor's office adequately rebutted the

---

1. The details of this appeal are set forth in *Currier v. Holden*, 862 P.2d 1357, 1360–72 (Utah Ct. App.1993).

presumption of shared confidences and that McClellan's [new] trial counsel was satisfied with the precautions taken to screen Hadfield." *Id.* ¶ 23. It thus concluded that Rupper had not rendered ineffective assistance. The court of appeals further held that McClellan had waived his right to claim error as to the admission of the tape because he had not sought a continuance to attempt to mitigate the impact of the tape during his trial. *Id.* ¶ 31.

### STANDARD OF REVIEW

¶ 17 On certiorari, we review the decision of the court of appeals for correctness, granting no deference to its conclusions of law. *State v. Brake,* 2004 UT 95, ¶ 11, 103 P.3d 699. "When confronted with ineffective assistance of counsel claims, we review a lower court's purely factual findings for clear error, but review the application of the law to the facts for correctness." *Taylor v. State,* 2007 UT 12, ¶ 13, 156 P.3d 739. Additionally, we review the legal questions underlying the admissibility of evidence for correctness. *See State v. Workman,* 2005 UT 66, ¶ 10, 122 P.3d 639.

### ANALYSIS

¶ 18 We will first address the effect of the conflict of interest created when McClellan's former defense counsel became associated with the public office responsible for McClellan's prosecution. Second, we will address the admissibility of the audio tape of McClellan's police interview. Finally, we will address McClellan's pending motion to terminate his representation by his current defense counsel.

### I. THE UTAH COUNTY ATTORNEY'S OFFICE SHOULD HAVE BEEN DISQUALIFIED FROM MCCLELLAN'S PROSECUTION

*A. Former Defense Counsel's Association with the Prosecutor's Office Creates a Rebuttable Presumption of Shared Confidences*

¶ 19 The limited issue of whether an entire county attorney's office must be disqualified from a defendant's prosecution when that defendant's former defense counsel becomes employed by the county attorney's office is a question of first impression in Utah. McClellan urges us to adopt a rule requiring per se disqualification. We decline to do so. We agree with the court of appeals that a more flexible rule better reflects Utah's rules, precedent, and policy. Accordingly, we adopt the rule formulated by the court of appeals:

> [T]o ensure faith in the impartiality and integrity of the criminal justice system, and to prevent a chilling effect on a defendant's willingness to confide in defense counsel, the entire prosecutor's office will be assumed to be privy to the confidences obtained by the former defense lawyer. The prosecutor may rebut this presumption by showing that effective screening procedures have been used to isolate the defendant's former counsel from the prosecution of the substantially related criminal charges.

*State v. McClellan,* 2008 UT App 48, ¶ 22, 179 P.3d 825.

¶ 20 While we have not previously addressed the precise question of the consequences of defense counsel's association with the prosecuting entity during the course of prosecution, the concerns underlying this issue are not new. In *State v. Brown,* this court adopted a rule prohibiting a city prosecutor from assisting in the defense of an accused, emphasizing that such dual representation would "jeopardize[ ]" the "vital interests of the criminal justice system," and that "fairness and impartiality in the adjudication process must be diligently maintained" in order to "ensure [public] faith in the impartiality and integrity of the justice system." 853 P.2d 851, 856–58 (Utah 1992). These same policy considerations are at issue here. A presumption of shared confidences between the former defense counsel and the county attorney's office adequately addresses these considerations.

¶ 21 In adopting this rule, we are also guided by the Utah Rules of Professional Conduct. Clearly, under rule 1.9(a), a former defense attorney is prohibited from participating in the prosecution of his or her

former client "in the same or a substantially related matter" absent that client's "informed consent, confirmed in writing." Utah Rules of Prof'l Conduct R. 1.9(a) (2009). Ordinarily, such a conflict of interest is attributed to all members of a disqualified attorney's firm. *Id.* R. 1.10. However, the Rules of Professional Conduct contemplate that the conflict need not be generally attributed if "the personally disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom." *Id.* R.1.10(c)(1). While this rule applies specifically only to attorneys working in the private sector, it demonstrates our preference for screening over per se disqualification of an entire group of associated attorneys.

¶ 22 We note that other courts are divided over whether per se disqualification of the entire prosecutor's office is necessary to adequately protect the rights of the accused. *Lux v. Virginia,* 24 Va.App. 561, 484 S.E.2d 145, 150 (Va.Ct.App.1997). However, the majority of jurisdictions that have addressed this issue have rejected the inflexibility of a per se rule and have held instead that "the entire staff ordinarily need not be disqualified from prosecuting the defendant if the staff member who had previously worked for the defendant is isolated from any participation in the prosecution of the defendant." *New Mexico v. Pennington,* 115 N.M. 372, 851 P.2d 494, 498 (Ct.App.1993); *see also Nebraska v. Kinkennon,* 275 Neb. 570, 747 N.W.2d 437, 444 (2008)("[W]hen the disqualified attorney is effectively screened from any participation in the prosecution of the defendant, the prosecutor's office may, in general, proceed with the prosecution."); *In re R.B.,* 583 N.W.2d 839, 842 ("Based upon the extensive efforts made to screen [former defense counsel] from any communication with anyone in the State's Attorney's Office about this case after her employment with that office ..., we find no error in the trial court's denial of [defendant's] motions to dismiss or recuse [the entire office].").

■■ ¶ 23 The rebuttable presumption of shared confidences which we adopt today avoids the drastic result of disqualifying an entire county attorney's office based on only the appearance of impropriety, without regard to whether any confidence was actually breached or any prejudice to the defendant actually resulted, while at the same time ensuring the rights of the accused are protected. *See Kinkennon,* 747 N.W.2d at 443. The rebuttable presumption allows "the trial court [to] evaluate[ ] the circumstances of a particular case and then determine[ ] whether disqualification of the entire office is appropriate." *Id.* In order to rebut the presumption, the burden rests with the prosecutor's office to demonstrate that necessary and effective steps have been taken to prevent the transfer of any confidential information between former defense counsel and those conducting the prosecution. The prosecutor's office must show that it has implemented sufficient measures to screen former defense counsel and that it has consistently followed through with those measures. *See Michigan v. Davenport,* 280 Mich.App. 464, 760 N.W.2d 743, 750 (2008).

### B. The Utah County Attorney's Office Did Not Rebut the Presumption of Shared Confidences

■■ ¶ 24 While we concur in the rule and reasoning adopted by the court of appeals, we disagree with that court's application of the rule. The court of appeals was unable to determine from the incomplete record extant in this case whether McClellan's former defense counsel Hadfield had or had not been suitably screened. Because a defendant bears the burden of ensuring an adequate record on which to prove ineffective assistance of counsel on appeal, *see State v. Litherland,* 2000 UT 76, ¶ 16, 12 P.3d 92, the court of appeals construed the deficiencies in the record against McClellan and "assume[d] that the prosecutor's office adequately rebutted the presumption of shared confidences." *McClellan,* 2008 UT App 48, ¶ 23, 179 P.3d 825. We disagree.

¶ 25 We begin with the presumption that when defense counsel Hadfield joined the Utah County Attorney's Office three days before McClellan's trial, an impermissible conflict of interest was created. That conflict should have been imputed to the entire county attorney's office unless it was rebutted.

The county attorney's office was required to show that it had adopted effective measures to prevent the transfer of any of McClellan's confidences from Hadfield to those engaged in the prosecution. The record in this case is not simply inadequate on this point, it is nonexistent. There is no evidence of any attempt by the prosecutor to show that Hadfield was effectively screened because none was offered. Neither the prosecutor nor the court ever raised the issue. McClellan's new defense counsel also failed to raise the issue. However, no objection is required, and the lack of an objection does not change the analysis.

¶ 26 The presumption of impermissibly shared confidences was not rebutted, and consequently stands. The trial court was under an obligation to disqualify the entire Utah County Attorney's Office. Its failure to do so was error.

### C. The Egregious Mismanagement of McClellan's Case Compels a Presumption of Prejudice

¶ 27 To support reversal on a finding of error, we require a showing of prejudice— a showing by the defendant in this case that absent the failure of the court to disqualify the prosecutor there is a reasonable likelihood that the outcome of his trial would have been more favorable. *See State v. Lee*, 2006 UT 5, ¶ 26, 128 P.3d 1179. On the specific facts of McClellan's case, however, we will presume prejudice. It has taken more than twenty years for McClellan's first appeal, his constitutionally guaranteed right to review of his conviction, to reach us. Much of the record has been lost or destroyed. The exhibits have been destroyed. Prompt attention to motions, notices, and orders has been dramatically lacking. None of these difficulties appear to be McClellan's doing. We cannot in good conscience assume regularity in a circumstance when so much time has passed, so many defense lawyers have come and gone, and so many mistakes have been allowed. In such a circumstance, it would be unjust to hold an incarcerated defendant responsible for the loss of the court records by requiring him to demonstrate the likelihood of a more favorable outcome.

¶ 28 We are also compelled to note that we are not pleased with the result we are forced to reach in this case. We have no reason to assume that the verdict that would have been reached on a timely retrial would have differed from that reached originally. However, McClellan's rights have been so severely trodden upon in this instance that it is impossible for us to do otherwise. After twenty years, this is McClellan's first appeal of right. It is an appeal that should have been heard in 1989 when the first notice of appeal was filed, but was not because of missteps outside of McClellan's control: the district court delayed for almost three years before transferring his file to the appellate court and his defense counsel never filed a brief on his behalf. Although the court eventually sought to remedy this error by ordering resentencing, McClellan was not informed of this result, the order was never filed, and resentencing did not take place until 2005. Meanwhile, the court record was destroyed. In the years since McClellan's conviction, his case has been passed from attorney to attorney. He has been ignored and forgotten. After twenty years in prison, McClellan is still entitled to a fair trial. We therefore remand for a new trial.

¶ 29 We recognize that this result is also unfair to McClellan's victim. She has absolutely no responsibility for the errors in this case. However, our constitutional system is primarily designed to protect the innocent, not punish the guilty. When, as here, the two are in conflict, the greater good lies in protecting the rights of the innocently accused rather than ensuring the conviction of all who are guilty. When the constitutionally protected rights of a defendant are blatantly violated, that violation must be corrected in order to prevent the same occurring to an innocent defendant in the future. Our constitutional compact has already made that choice.

### II. MCCLELLAN'S AUDIO–TAPED POLICE INTERVIEW WAS ADMISSIBLE AS REBUTTAL EVIDENCE

¶ 30 Having remanded McClellan's entire case for a new trial on the basis of the conflict of interest, the outcome of the re-

maining issue on appeal is without consequence. However, we briefly address the admissibility of McClellan's taped police interview for guidance to the bench and bar.

¶ 31 McClellan argues that the trial court erred in allowing portions of his recorded police interview to be played for the jury because he had not previously been made aware of the existence of the recording. He argues that this failure was a violation of the discovery rules found in Rule 16 of the Utah Rules of Criminal Procedure and constitutes plain error. The State argues that any violation was merely technical in nature.

¶ 32 In order for the admission of evidence to constitute plain error, "a defendant must demonstrate that (i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome." *State v. Ross*, 2007 UT 89, ¶ 17, 174 P.3d 628 (internal citations and quotation marks omitted). Here, McClellan is unable to satisfy the third prong of the test; there is no realistic possibility that the outcome of his trial would have been different had the recording not been admitted. Identical evidence was already before the jury in the form of the testimony of the interviewing officer. And while it is true that had McClellan been aware of the recording he may have altered his testimony and chosen not to perjure himself, there is no privilege to testify falsely in the mistaken belief that prior statements will not be disclosed.

## III. REPRESENTATION BY MCCLELLAN'S CURRENT DEFENSE COUNSEL IS TERMINATED

¶ 33 This court is in receipt of McClellan's Motion to Terminate Counsel, received directly from McClellan on February 9, 2009. In his motion, McClellan requests that his representation by Margaret P. Lindsay be terminated. Upon the issuance of this opinion, McClellan's motion is granted, new counsel to be appointed on remand.

## CONCLUSION

¶ 34 As there was no showing that McClellan's former defense counsel Hadfield was screened following his association with the Utah County Attorney's Office, Hadfield's conflict of interest should have been imputed to that entire office. Therefore, the Utah County Attorney's Office should have been disqualified from McClellan's prosecution. Because of the egregious mismanagement of McClellan's case, we presume that the failure to disqualify resulted in prejudice to McClellan. Finally, we grant McClellan's motion to terminate his representation by his current defense counsel.

¶ 35 The conviction is reversed and the case remanded for a new trial.

¶ 36 Chief Justice DURHAM and Associate Chief Justice DURRANT concur in Justice WILKINS' opinion.

NEHRING, Justice, concurring and concurring in the result:

¶ 37 I concur in parts I.A. and I.B. and concur in the result of part I.C. I disagree, however, with the assumption that a defendant whose confidences we presume were impermissibly shared may not obtain relief unless he can show prejudice. This view would place a defendant whose confidences were presumed shared in the untenable position of being required to prove what confidences were disclosed and why the outcome of his trial would have been more favorable had the confidences not been disclosed. The presumption that confidential information was shared when a defendant's attorney joins the office of the prosecutor is necessary because the prosecutor is the only party who knows whether confidential information was in fact disclosed. Additionally, where the presumption is unrebutted, it logically follows that all confidences are presumed shared. Likewise, only the prosecutor knows if confidential information was used against the defendant. When the presumption is unrebutted, the defendant is as limited in his knowledge of whether confidential information was used against him as he is regarding whether confidential information was disclosed. Thus, I believe that it is

inconsistent to relieve the defendant of the burden of proving a confidence was shared and then saddle him with the burden of showing that the confidences were used against him and that such use was prejudicial. I am simply unable to harmonize the notion that confidences can be impermissibly shared with the concept that while the sharing was wrongful, it may not have mattered. I would therefore hold that an unrebutted presumption of wrongfully shared confidences results in an unrebuttable presumption of prejudice.

¶ 38 Justice PARRISH concurs in Justice NEHRING's concurring opinion.