2014 UT App 207

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
SPENCER ISAIAH CATER,
Defendant and Appellant.

Opinion
No. 20120201-CA
Filed September 5, 2014

Third District Court, Salt Lake Department
The Honorable William W. Barrett
No. 091901251

David M. Corbett and Craig L. Pankratz, Attorneys
for Appellant

Sean D. Reyes and Jeanne B. Inouye, Attorneys
for Appellee

JUDGE MICHELE M. CHRISTIANSEN authored this Opinion,
in which JUDGE J. FREDERIC VOROS JR. and SENIOR JUDGE
RUSSELL W. BENCH concurred.[1]

CHRISTIANSEN, Judge:

¶1     Spencer Isaiah Cater appeals his aggravated kidnapping and aggravated robbery convictions, both first-degree felonies. He argues that the trial court erred by declining to disqualify the entire Salt Lake County District Attorney's office (the SLCDA) from

---

1. The Honorable Russell W. Bench, Senior Judge, sat by special assignment as authorized by law. *See generally* Utah Code Jud. Admin. R. 11-201(6).

prosecuting his case. Because Cater has not demonstrated that the trial court's disqualification decision was erroneous, we affirm.

BACKGROUND

¶2      Cater's convictions arise from a crime spree that involved five robberies, two kidnappings, and a murder. The SLCDA charged Cater in February 2009 for his role in the crimes, and the case was assigned to Assistant District Attorneys Stephen L. Nelson and Michael E. Postma. An attorney from the Salt Lake Legal Defender Association initially entered an appearance as Cater's defense counsel, but withdrew due to a conflict of interest. Shortly thereafter, B. Kent Morgan, Jeffrey W. Hall, and another attorney entered their appearances as counsel for Cater. Morgan and Hall had both previously worked as prosecutors for the SLCDA.

¶3      In April 2009, Morgan resumed his employment with the SLCDA and terminated his representation of Cater. In December 2009, the State moved the trial court to conduct a hearing to determine whether Morgan's employment with the SLCDA presented a conflict of interest that would require disqualification of the entire SLCDA as the prosecuting agency. At the March 2010 hearing, the SLCDA notified the court that the Utah Attorney General's office would replace the SLCDA as the entity prosecuting Cater. As a result, the parties agreed that the hearing was no longer necessary. In January 2011, Hall also returned to the SLCDA, and he terminated his representation of Cater at that time.

¶4      On February 14, 2011, the Attorney General's office notified Cater that it had appointed Nelson, Postma, and another SLCDA attorney, Nathan J. Evershed, as special assistant attorneys general to prosecute his case. Cater filed a motion objecting to their appointment, arguing that Morgan's and Hall's employment by the SLCDA after having represented Cater required the disqualification of every attorney in that office from his

prosecution. The SLCDA opposed Cater's motion, and the trial court scheduled an evidentiary hearing.

¶5      After the hearing, the trial court concluded that the SLCDA had implemented sufficient measures to screen Cater's former defense counsel from his prosecution and had therefore rebutted a presumption that Cater's former counsel had shared his confidences with SLCDA attorneys. In making this determination, the trial court found that an unwritten screening policy was in effect at the time Morgan and Hall rejoined the SLCDA. With respect to Morgan, the trial court found that Morgan was aware of the unwritten policy at the time he rejoined the SLCDA, that he was screened from Cater's prosecution during his time at the SLCDA, and that he had not disclosed any confidences obtained during his representation of Cater. With respect to Hall, the trial court found that Hall acknowledged his ethical responsibilities at the time he rejoined the SLCDA and knew that he needed to be screened from Cater's prosecution, that he had been screened from the prosecution from the time he rejoined the SLCDA, and that he had not disclosed any of Cater's confidences.

¶6      Having found that the SLCDA had taken necessary and effective steps to prevent Morgan and Hall from sharing any of Cater's confidences with the SLCDA, and that Morgan and Hall had not, in fact, shared any of Cater's confidences, the trial court denied Cater's objection to the appointment of SLCDA prosecutors to his case. A jury convicted Cater at trial of aggravated kidnapping and aggravated robbery. He now appeals.

ISSUES AND STANDARDS OF REVIEW

¶7      Cater challenges the trial court's denial of his motion to disqualify the SLCDA. "Trial courts are generally allowed considerable discretion in granting or denying motions to disqualify counsel, and such decisions will only be overturned when that discretion is exceeded." *State v. Balfour*, 2008 UT App

410, ¶ 11, 198 P.3d 471. We therefore review the trial court's ultimate decision not to disqualify the SLCDA for an abuse of discretion.[2] *Id.* Where Cater challenges subsidiary factual findings or legal conclusions, we review the trial court's factual findings for clear error and its legal conclusions for correctness. *Id.*

## ANALYSIS

¶8    Generally, when a district attorney's office hires a former defense attorney, the entire office will be presumed privy to any client confidences obtained by the defense lawyer. *State v. McClellan*, 2009 UT 50, ¶ 19, 216 P.3d 956. Unless rebutted, this presumption of shared confidences requires the disqualification of that district attorney's office from the prosecution of any of the defense attorney's former clients. *See id.* ¶¶ 23, 26. The district

---

2. In *State v. Balfour*, we observed that "due to the special interest in administering the law governing attorney ethical rules, a trial court's discretion in situations implicating those rules is limited." 2008 UT App 410, ¶ 11, 198 P.3d 417 (citation and internal quotation marks omitted). We stated that, as a result, "attorney disqualifications are reviewed as mixed questions of law and fact." *Id.* However, discretionary rulings and mixed-question determinations are distinct concepts subject to different types of appellate review. *See Murray v. Labor Comm'n*, 2013 UT 38, ¶ 33, 308 P.3d 461. And in *Balfour* itself we did not review the attorney disqualification at issue as a true mixed question, but reviewed "the district court's factual conclusions under a clear error standard" and "the district court's legal interpretation of particular ethical norms under a de novo standard." 2008 UT App 410, ¶ 11 (citation and internal quotations marks omitted). Accordingly, we interpret *Balfour* as simply stating that a trial court's discretionary ruling on a motion to disqualify counsel may involve subsidiary legal and factual determinations, and not as departing from our established standard of review.

attorney's office may rebut this presumption "by showing that effective screening procedures have been used to isolate the defendant's former counsel from the prosecution of the substantially related criminal charges." *Id.* ¶ 19 (citation and internal quotation marks omitted).

¶9      Cater challenges the trial court's determination that the SLCDA rebutted the presumption of shared confidences that arose when Morgan and Hall rejoined the SLCDA. In addressing Cater's appeal, we first consider his argument that certain of the trial court's factual findings were clearly erroneous, and then address his challenge to the trial court's determination that Hall and Morgan were effectively screened from his prosecution.

## I. The Trial Court's Factual Findings Are Not Clearly Erroneous.

¶10     Cater argues that two of the trial court's findings regarding the SLCDA's screening procedures are clearly erroneous. To establish clear error, the challenging party must show that a finding is not supported by legally sufficient evidence even when the evidence is viewed in a light most favorable to the finding. *State v. Clark*, 2005 UT 75, ¶ 17, 124 P.3d 235. And we will set aside a factual finding only if it is "against the clear weight of the evidence" or we reach a "definite and firm conviction that a mistake has been made." *Brown v. State*, 2013 UT 42, ¶ 37, 308 P.3d 486 (citation and internal quotation marks omitted).

### A.      The Trial Court's Finding that Morgan Was Aware of the Unwritten Policy Is Not Clearly Erroneous.

¶11     The trial court ruled orally that Morgan "was aware of the unwritten policy and procedure pertaining to this kind of circumstance." Cater argues that this finding is clearly erroneous because it is contrary to Morgan's testimony that he was unaware of any screening policy and did not believe the SLCDA had one in place at the time of his return to the office. However, the trial court found that the SLCDA did have an unwritten screening policy in

place. And the trial court's finding that Morgan was aware of this policy is supported by record evidence. Dahnelle Burton-Lee, then a chief deputy of the SLCDA, submitted an affidavit to the trial court stating that she had discussed the terms of Morgan's reinstatement with him upon his return to the office. Specifically, she averred that after Morgan disclosed all of the cases he had been involved with in private practice, she instructed him "not to participate any further in any manner in any of those cases, and . . . not to discuss or disclose any information regarding any of those cases, including the criminal case pending against Mr. Cater, to anyone within the office or outside of the office." Burton-Lee also averred that she reminded Morgan that "he was required to conduct himself in accordance with the Rules of Professional Conduct." Given this evidence supporting the trial court's factual finding, we cannot say the finding is clearly erroneous.

¶12     Cater argues that we should disregard Burton-Lee's affidavit because it was not formally introduced as an exhibit at the hearing on Cater's motion. He asserts that the affidavit testimony cannot support the trial court's findings unless admitted into evidence as an exhibit. We disagree. Generally, a trial court may decide motions on the basis of affidavits submitted by the parties. Utah R. Civ. P. 43(b); *see also id.* R. 81(e) (explaining that the Utah Rules of Civil Procedure govern in criminal cases where no other rule is applicable). And our supreme court has recognized that a trial court may "grant or deny a motion on the sole or combined bases of affidavits, depositions or oral testimony." *Stan Katz Real Estate, Inc. v. Chavez*, 565 P.2d 1142, 1143 (Utah 1977). Nothing in our rules requires that in deciding a motion, the trial court formally receive affidavits as exhibits in an evidentiary hearing before considering affidavit testimony, and Cater has identified no authority to that effect. Here, the State included Burton-Lee's affidavit with its opposition to Cater's motion to disqualify, and the trial court properly considered that affidavit testimony. Accordingly, we will not disturb the trial court's finding that Morgan was aware of the unwritten screening policy on this basis.

B.     The Trial Court's Finding that Morgan Was Screened from Cater's Prosecution Is Not Clearly Erroneous.

¶13    Cater next challenges the trial court's finding that Morgan "was screened from the prosecution of the defendant" during the time he was employed at the SLCDA. He argues that the evidence shows that the unwritten policy in place at the SLCDA "was not consistently applied" to screen Morgan from Postma, Evershed, and Nelson. We conclude, however, that the evidence in the record supports the trial court's finding. Postma testified that he discussed screening Morgan with Nelson and another SLCDA attorney shortly after Morgan returned to the office. In those discussions, Postma was directed not to discuss the case with Morgan, share files with him, or allow him access to materials. Postma was also instructed that Morgan "was to have absolutely no contact whatsoever with any part of the prosecution." Nelson was a party to these discussions with Postma. Nelson testified that he did not receive formal, written screening procedures but employed his own procedures to screen himself from Morgan. Evershed testified that he received instruction on the screening policy for former defense attorneys at the time he was assigned to the case.

¶14    Cater's attack on this finding appears targeted in part at the sufficiency of the measures undertaken by the SLCDA to screen Morgan from Cater's prosecution. We address the sufficiency of the measures undertaken by the SLCDA as part of Cater's challenge to the trial court's ultimate disqualification decision. However, with respect to whether the SLCDA took steps to screen Morgan from Postma, Evershed, and Nelson, we conclude that the evidence supports the trial court's factual finding.

II. The Trial Court Did Not Abuse Its Discretion in Determining that Disqualification Was Unnecessary.

¶15    Cater argues that the trial court's disqualification decision should be reversed because "the State failed to prove that it employed adequate screening measures after its employment of

Morgan and Hall." To rebut the presumption of shared confidences, the State was required to show that "effective screening procedures" were in place to isolate Morgan and Hall from Cater's prosecution. *State v. McClellan*, 2009 UT 50, ¶ 19, 216 P.3d 956 (citation and internal quotation marks omitted). "What constitutes an effective screening procedure will depend on the particular circumstances of each case." *State v. Kinkennon*, 747 N.W.2d 437, 445 (Neb. 2008).[3] This "case-by-case approach enables a trial court to protect a criminal defendant from the due process concern at issue—the disclosure of confidences revealed to his attorney during the attorney–client relationship." *Lux v. Commonwealth*, 484 S.E.2d 145, 151 (Va. Ct. App. 1997). We will reverse the trial court's disqualification determination only if it is "beyond the limits of reasonability," *State v. Olsen*, 860 P.2d 332, 334 (Utah 1993) (citation and internal quotation marks omitted), though we are mindful that the trial court's discretion is "limited" here, *State v. Balfour*, 2008 UT App 410, ¶ 11, 198 P.3d 471. Because Cater has not successfully challenged any of the trial court's factual findings, we take those findings, together with the evidence in the record, as the starting point for our analysis. *CCW Ranch, LLC v. Nielsen*, 2012 UT App 205, ¶ 3 & n.1, 283 P.3d 1072.

¶16    In evaluating the SLCDA's screening procedures under *McClellan*, we look to other jurisdictions that have adopted similar rules to govern the disqualification of a prosecutor's office under comparable circumstances. *See supra* n.3. In *State v. Kinkennon*, the Nebraska Supreme Court considered whether a county attorney's

---

3. In the time since our supreme court adopted the rebuttable presumption of shared confidences in *State v. McClellan*, 2009 UT 50, 216 P.3d 956, there has been little development in this area of the law in Utah. *See, e.g., Williams v. Department of Corr.*, 2013 UT App 159, ¶¶ 4–6, 12, 306 P.3d 821; *State v. Steele*, 2010 UT App 185, ¶ 41, 236 P.3d 161. Accordingly, as the supreme court did in *McClellan*, we look to other jurisdictions for guidance. *See* 2009 UT 50, ¶¶ 22–23.

office should be disqualified from prosecuting a defendant after the office hired an associate from the firm representing the defendant. 747 N.W.2d at 441. The defendant had requested appointment of a special prosecutor, arguing that the associate's employment with the county attorney's office created a conflict of interest. *Id.* The Nebraska Supreme Court declined to adopt a per se rule of disqualification, ruling that the need for disqualification in a particular case may be rebutted if the county attorney demonstrates that "the disqualified attorney is effectively screened from any participation in the prosecution of the defendant." *Id.* at 444. The court observed that "at a minimum, the disqualified lawyer should acknowledge the obligation not to communicate with any of the other lawyers in the office with respect to the matter" and "the other lawyers in the office who are involved with the matter should be informed that the screening is in place and that they are not to discuss the matter with the disqualified lawyer." *Id.* at 445. The court noted that other screening measures may be appropriate in a particular case, such as screening the disqualified attorney from the entire office, limiting the disqualified attorney's access to files related to the matter, and issuing periodic reminders of the screening procedures. *Id.* Ultimately, the court determined that "there is nothing in the record to suggest, nor does [the defendant] allege, that any [confidential] information was communicated by [the disqualified attorney] to the county attorney's office to aid in the prosecution of this case." *Id.* The court therefore concluded that the district court had not abused its discretion by declining to disqualify the county attorney's office and appoint a special prosecutor. *Id.*

¶17    In *State ex rel. Tyler v. MacQueen*, the Supreme Court of Appeals of West Virginia considered whether a district court had abused its discretion in denying appointment of a special prosecutor where the county attorney's office had hired the defendant's former counsel. 447 S.E.2d 289, 290–91 (W. Va. 1994). The court adopted the rule that disqualification is not necessary where the district court "has held a hearing on any motion to disqualify filed on this basis and determined that the assistant

prosecutor has effectively and completely been screened from involvement, active or indirect, in the case." *Id.* at 293. At a hearing on the defendant's motion, the county attorney's office submitted affidavits from both the county attorney and disqualified counsel explaining the measures undertaken to screen counsel from the prosecution. *Id.* at 292. Specifically, the county attorney averred that he instructed the disqualified attorney "to avoid any discussion of the case with any other [prosecutors]" and that all prosecutors in the office "are instructed to avoid discussing any case with anyone in the office who may have a conflict of interest." *Id.* The county attorney further averred that, to the best of his knowledge, the disqualified attorney had followed those directions and no other prosecutor had attempted to discuss the defendant's case with the disqualified attorney. *Id.* The disqualified attorney averred that no employee of the county attorney's office had attempted to discuss the defendant's case with him and that he had not divulged any information related to the case to any person at the office. *Id.* The court concluded that the "alleged appearance of impropriety" resulting from the disqualified attorney's employment with the county attorney's office dissipated "when viewed against the ongoing efforts of the prosecutor's office to completely screen [the disqualified attorney] from any involvement in [the defendant's] case." *Id.* The court accordingly declined to disturb the district court's refusal to appoint a special prosecutor. *Id.* at 293.

¶18    Here, the trial court received testimony from each of the prosecutors assigned to the case—Nelson, Postma, and Evershed. Each prosecutor testified regarding the measures that were taken to screen Morgan and Hall from Cater's prosecution. Postma testified that his supervisors instructed him not to have any discussions or share any materials with Morgan or Hall after each joined the office. Postma testified that Nelson was involved in instructing him to screen Morgan from the case. Nelson testified that his superiors had instructed him both orally and in writing not to have anything to do with Hall with respect to the case. He also testified that SLCDA prosecutors' case files are generally password

protected and cannot be accessed without permission. Evershed testified that he was instructed on the screening policy for former defense attorneys at the time he was appointed as a prosecutor on the case.

¶19    The trial court also heard testimony from assistant district attorney Robert Stott. Stott testified that an unwritten screening policy was in place at the SLCDA during the time Cater's prosecution was ongoing, which he had memorialized in written form in February 2011. The written policy instructs disqualified attorneys that they may not participate in, access files related to, maintain at the office materials related to, or discuss with any person in the office the prosecution of their former clients. The written policy also instructs prosecutors not to discuss screened cases with or around the disqualified attorney and not to allow the disqualified attorney access to any files or other materials related to those cases.

¶20    Both Morgan and Hall, the disqualified attorneys, also testified at the hearing. Hall testified that upon joining the office, he understood that he had an ethical responsibility not to discuss any aspect of the cases he had worked on, including Cater's case, with other members of the SLCDA. Morgan also testified that he understood his ethical obligation not to divulge any information related to Cater's case. Although Morgan testified that he believed the SLCDA had no screening procedures in place at the time of his rehire, he testified that he screened himself from the prosecution. However, we again note that Cater has not successfully challenged the trial court's finding that Morgan was aware of the SLCDA's screening policy at the time of his rehire. *Supra* ¶¶ 11–12.

¶21    Considering the record evidence and the trial court's findings on the disputed facts, we conclude that the SLCDA demonstrated that sufficient screening procedures were in place to prevent the disclosure of any of Cater's privileged information to the prosecutors involved in his case. The disqualified attorneys "acknowledge[d] the obligation not to communicate with any of

the other lawyers in the office with respect to the matter," and the prosecutors assigned to Cater's case were "informed that the screening [was] in place and that they [were] not to discuss the matter with the disqualified lawyer." *See State v. Kinkennon*, 747 N.W.2d 437, 445 (Neb. 2008). The trial court's findings that no confidences were shared by either Morgan or Hall persuades us that the screening procedures implemented by the SLCDA were effective in safeguarding Cater's confidences. Accordingly, we are not convinced that the trial court erred in determining that the SLCDA had rebutted the presumption of shared confidences.

¶22 Cater argues that despite the actual effectiveness of the screening procedures employed by SLCDA, we should conclude that an unwritten policy is always inadequate to rebut the presumption of shared confidences established by *McClellan*. Cater asserts that the *McClellan* court's citation to the decision of the Michigan Court of Appeals in *People v. Davenport*, 760 N.W.2d 743, 750 (Mich. Ct. App. 2008), "likely signaled" our supreme court's understanding of what would constitute minimally effective screening procedures. *See State v. McClellan*, 2009 UT 50, ¶ 23, 216 P.3d 956. In *Davenport*, the court directed trial courts to consider

> whether the prosecutor's office implemented effective, written screening procedures that take into account the structural organization of the law firm or office, the likelihood of contact between an attorney with a conflict of interest and the personnel involved in the ongoing representation, and the existence of rules that prevent the attorney with the conflict of interest from accessing files or information pertaining to a particular case.

*Id.* (citation and internal quotation marks omitted). Cater therefore invites this court to "hold that, at a minimum, the screening measures must include a written policy, distributed to all attorneys and staff of the prosecuting agency, that (1) identifies the existence of the conflict to all attorneys and staff; (2) provides a specific list

of rules to be followed by employees aimed at prohibiting all communication with the disqualified attorney about the case; (3) prohibits the conflicted attorney's access to office files and information about the case; and (4) provides for the easy identification of affected prosecution files."

¶23    While we agree that a written policy setting forth comprehensive screening measures may be advisable, we are not persuaded that such measures are necessary to effectively screen former defense attorneys in all cases. Indeed, after *Davenport* was remanded for an evidentiary hearing to explore the county attorney office's screening procedures, the Michigan Court of Appeals held that the office's unwritten screening policy was sufficient:

> Though the office maintained no written procedures about how to handle a potential conflict or the Davenport file in particular, it is abundantly clear that both attorneys and all staff members were informed and understood that [the disqualified attorney] was to have no contact with the Davenport file and that he would not participate in any discussions, interviews, or meetings about the case.

*People v. Davenport*, 779 N.W.2d 257, 260 (Mich. Ct. App. 2009). The court therefore concluded that "the prosecutor's office took adequate steps to prevent improper communications and consistently followed through with those steps, and no evidence showed that there were any improper communications about the case." *Id.* at 261. Our review of the case law on this subject confirms that the memorialization of a screening policy in writing is a factor to be considered by the district courts in evaluating the effectiveness of that policy, not a categorical requirement. *See, e.g.,* *State ex rel. Romley v. Superior Court*, 908 P.2d 37, 43 (Ariz. Ct. App. 1995) (observing that "reducing the [screening] mechanism to writing with officewide distribution . . . will enhance its effectiveness"); *Kinkennon*, 747 N.W.2d at 445 (explaining that some

circumstances may require additional screening procedures, such as "a written undertaking by the screened lawyer to avoid any communication with other lawyers in the office . . . relating to the matter"); *State v. Addison*, 89 A.3d 1214, 1220 (N.H. 2014) (denying a motion to disqualify the prosecutor's office on appeal, based on the existence of a screening policy that was not memorialized until two months after the disqualified attorney began work).

¶24　Ultimately, we are not convinced that the screening procedures Cater asks us to require of a prosecutor's office were necessary in this case. Cater has neither demonstrated that the screening efforts undertaken by the SLCDA were inadequate to safeguard the confidences he had shared with his former counsel, nor explained how the screening requirements he proposes would have more effectively protected those confidences. Absent a showing that the measures employed by the SLCDA did not "protect [Cater] from the due process concern at issue—the disclosure of confidences revealed to his attorney during the attorney–client relationship," *Lux*, 484 S.E.2d at 151, we cannot say the trial court abused its discretion in determining that the SLCDA showed that it employed sufficient screening measures to rebut the presumption of shared confidences.

## CONCLUSION

¶25　Cater has not demonstrated that the trial court's factual findings lacked evidentiary support. The trial court did not abuse its discretion in determining that the SLCDA rebutted the presumption of shared confidences and that disqualification was unnecessary. We therefore affirm Cater's convictions.

———