2019 UT App 118

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
PETER JAMES BUNKER,
Appellant.

Opinion
No. 20160440-CA
Filed July 11, 2019

Third District Court, Silver Summit Department
The Honorable Paige Petersen
Nos. 131500342, 131500295

Ann M. Taliaferro, Attorney for Appellant

Sean D. Reyes and Christopher D. Ballard, Attorneys
for Appellee

JUDGE JILL M. POHLMAN authored this Opinion, in which
JUDGES GREGORY K. ORME and DAVID N. MORTENSEN concurred.

POHLMAN, Judge:

¶1    It is an old legal maxim that there is no right without a remedy. Peter James Bunker seeks in this appeal a remedy for delays in his appeals process without first establishing the infringement of any underlying rights. We accordingly affirm the district court's order terminating his probation as unsuccessful and reinstating his sentence.

### BACKGROUND

¶2    In 2013, Bunker was charged with assault by a prisoner. After finding Bunker indigent, the district court appointed

counsel to represent him (Trial Counsel). Bunker pleaded guilty to the charge.

¶3     In June 2014, the district court sentenced Bunker to a prison term not to exceed five years. The court ordered this prison term to run consecutively to Bunker's prison sentences in a separate case in which he pleaded guilty to three first-degree felonies and was sentenced to three concurrent zero-to-five-year prison terms, which the court had suspended in favor of probation. The court also ordered him to spend 320 days in jail with a credit of 247 days for time served. The court then suspended the prison term and placed Bunker on probation.[1]

¶4     In May 2015, Adult Probation and Parole (AP&P) alleged that Bunker had committed several probation violations. At a subsequent hearing before the district court that was handling both of Bunker's cases, Bunker admitted to two probation violations. The court revoked his probation, ordered him to serve 120 days in jail with credit for 55 days already served, and then reinstated his probation.

---

1. On July 23, 2014, the district court received a handwritten document signed by Bunker himself. This document was titled, "To the 3rd District Courts Notice of Appeal," and its text asked for "a change of heart on [his] sentencing" and "a chance for a second opinion." In response, the district court forwarded the document to the prosecutor and Trial Counsel. In an attached minute entry, the court advised counsel that it would "take no action at this time on any matter raised in the [document]" and invited them to file "an appropriate motion" if either one believed further action by the court was necessary. The parties debate whether the handwritten document constituted a notice of appeal. But the present appeal is taken exclusively from the district court's May 2016 probation revocation decision. Thus, the treatment and effect of Bunker's July 23, 2014 handwritten document are not questions that are properly before us.

¶5     The next year, AP&P again alleged that Bunker had violated the conditions of his probation. At a hearing, Bunker admitted to two probation violations, and the district court accordingly found that he had violated probation. On May 9, 2016, the court terminated Bunker's probation as unsuccessful and reinstated the three concurrent zero-to-five-year prison terms from the other case. Bunker filed a timely pro se notice of appeal on May 12, 2016, and this appeal was docketed.

¶6     Shortly after receiving the notice of appeal, this court informed Trial Counsel that this appeal had been filed. And in mid-July 2016, this court ordered Trial Counsel to file Bunker's docketing statement or other proper motion. One week later, Trial Counsel moved to withdraw as counsel for Bunker, explaining that, pursuant to his contract with the county, his obligation to represent Bunker "terminates with the filing of a Notice of Appeal." On August 2, 2016, this court granted the unopposed motion to withdraw and temporarily remanded the case to the district court for the determination of Bunker's indigence and, "if indigency [was] found, for appointment of counsel." This court stayed the appeal pending disposition in the district court.

¶7     For reasons that are not apparent on the record, it took another nineteen months for the district court to appoint counsel (Appellate Attorney) to represent Bunker on appeal. Once Appellate Attorney was appointed, the appeal proceeded through the routine process of briefing and argument.

ISSUE ON APPEAL

¶8     On appeal, Bunker does not claim error in the district court's decision to revoke his probation. He instead claims that the length of the appellate process violated his constitutional rights and resulted in structural error for which this court should presume prejudice. Because Bunker's claim is necessarily

brought for the first time on appeal, no standard of review applies, and we decide the issue as a matter of law.

## ANALYSIS

¶9     Bunker contends that he was denied due process because his rights to the assistance of appellate counsel and to a timely direct appeal have been violated.[2] Pointing to the time after his appeal was docketed but during which he remained without appointed appellate counsel, he asserts that he "has been prevented from proceeding with his appeal" given that "it took the court system over 20 months to appoint [him] an appellate attorney." According to Bunker, under the facts of his case, "the clear denial of fundamental constitutional rights is itself the harm," and this court therefore should not require him "to demonstrate prejudice in showing the likelihood of a more favorable outcome in his sentence." In other words, he asserts that this court should conclude that the delay in the processing of his appeal constitutes structural error.

¶10     Generally, "structural errors are flaws in the framework within which the trial proceeds, rather than simply an error in the trial process itself." *State v. Cruz*, 2005 UT 45, ¶ 17, 122 P.3d 543 (cleaned up). Because structural errors "affect the very framework of the trial," "a structural error analysis presumes

---

2. The State does not dispute that Bunker has the constitutional right to a direct appeal and the constitutional right to assistance of counsel on appeal. *See* Utah Const. art I, § 12 ("In criminal prosecutions the accused shall have . . . the right to appeal in all cases."); *Gailey v. State*, 2016 UT 35, ¶ 27, 379 P.3d 1278 (explaining that under the due process clause of the Fourteenth Amendment to the United States Constitution, defendants "have the right to the effective assistance of counsel on direct appeal"). For reasons discussed below, the State does not accept that Bunker has the constitutional right to a *timely* appeal.

prejudice." *Id.* The United States Supreme Court has "found structural errors only in a very limited class of cases." *Johnson v. United States*, 520 U.S. 461, 468 (1997).

¶11    Bunker's argument, in essence, has two components: (1) he faced the "denial of appellate counsel" "at a critical stage in [the] proceedings" and (2) the delay in the appellate process is "a critical problem" that prevented him from proceeding with his appeal through no fault of his own. Bunker argues that these components, together, "constitute[] structural error that does not require a showing of harm." We discuss each component in turn, and while we do not condone the regrettable delay in this appeal, we ultimately conclude that Bunker's rights were not violated and that these circumstances do not amount to structural error.[3]

¶12    First, Bunker complains that he was deprived of his right to appellate counsel during critical stages of the proceedings. The Utah Supreme Court has recognized that "the denial of counsel is a structural error that does not require a showing of harm where assistance of counsel has been denied *entirely* or during *a critical stage* of the proceeding." *State v. Maestas*, 2012 UT 46, ¶ 57, 299 P.3d 892 (emphasis in original) (cleaned up). In other words, "the denial of the right to counsel, standing alone, does not necessarily constitute structural error. To find structural

---

3. In terms of a remedy for the alleged structural error, Bunker suggests that this court "set aside and vacate his sentence" and, thereafter, "order the case closed." He claims that this proposed remedy would recognize "the harm to [him] in having already served a majority of the sentence imposed by the unreviewed orders" and would incentivize "future courts and others to refrain" from delaying the process in a similar manner. Because we conclude that there is no error, structural or otherwise, warranting relief in this case, we need not consider the propriety of Bunker's requested remedy.

error, the deprivation must occur at a critical stage of criminal proceedings." *State v. Montes*, 2019 UT App 74, ¶ 36.

¶13 "A critical stage is a step of a criminal proceeding that holds significant consequences for the accused." *Maestas*, 2012 UT 46, ¶ 57 (cleaned up). "Determining whether a given stage of a proceeding is critical involves considering whether the presence of counsel is necessary to preserve the defendant's basic right to a fair trial, whether potential substantial prejudice to the defendant's rights inheres in the particular confrontation, and the ability of counsel to help avoid that prejudice." *Id.* (cleaned up).

¶14 Bunker suggests that the time period between the granting of Trial Counsel's motion to withdraw in August 2016 and the appointment of Appellate Attorney in March 2018 was a critical stage of the appeal during which he was deprived of appellate counsel. Although the time period during which Bunker awaited the appointment of appellate counsel was unusually prolonged, we conclude this time period was not a critical stage of the proceeding. The only acts taken by this court and the district court while Bunker awaited the appointment of counsel involved verifying his indigency status and identifying who would serve as his appellate counsel. *Supra* ¶¶ 6–7. And when this court remanded to the district court for the appointment of counsel, it also expressly ordered that Bunker's appeal was stayed pending the district court's disposition. *Supra* ¶ 6. Thus, no decisions or events bearing on the merits of Bunker's case occurred while he was unrepresented by appellate counsel. *Cf. Penson v. Ohio*, 488 U.S. 75, 88 (1988) (explaining that the denial of appellate counsel may lead to the presumption of prejudice and emphasizing that the denial of counsel in that particular case "left petitioner completely without representation during the appellate court's actual decisional process"). And because of the stay, nothing happened in the court proceedings that would have required the presence of appellate counsel to preserve Bunker's right to a fair resolution of his appeal on the

merits. Once his appeal progressed to the stages that held "significant consequences" for him, i.e., briefing and argument, *see Maestas*, 2012 UT 46, ¶ 57 (cleaned up), Bunker was represented. As a result, he was not denied his right to counsel during a critical stage of the proceeding, and the first component of Bunker's argument does not support structural error here.

¶15 The second component of Bunker's argument, involving his complaints regarding the delay in the appellate process, implicate whether he has the right to a speedy appeal. A criminal defendant has the constitutional right to a speedy trial. *State v. Rohwedder*, 2018 UT App 182, ¶ 6, 436 P.3d 324 (citing U.S. Const. amend. VI). But as Bunker acknowledges, Utah courts have not recognized a right to a speedy appeal. In fact, the Utah Supreme Court has expressly "decline[d] to recognize a right to a speedy appeal." *State v. Arguelles*, 2003 UT 1, ¶ 125, 63 P.3d 731. The court also has noted that "[t]here is no controlling federal precedent that recognizes such a right" and has declined to consider whether the Utah Constitution includes this right. *Id.*

¶16 *Arguelles* is dispositive. Because this binding authority does not recognize a right to a speedy appeal, Bunker cannot show that the delay in his appeal violated this nonexistent right. *See id.*

¶17 Notwithstanding the fact that he lacks the "right to prosecute his appeal in a timely manner," Bunker suggests that "there comes a point where delay in the appellate process becomes presumptively prejudicial." In support, Bunker relies on *State v. McClellan*, 2009 UT 50, 216 P.3d 956, to argue that he should not be required to show prejudice resulting from the delay in this appeal. In *McClellan*, the defendant's appeal took more than twenty years to reach the supreme court for several reasons outside the defendant's control, including a near three-year delay in transferring his file from the trial court to the appellate court, the dismissal of his first attempt to appeal when his attorney failed to file a brief on his behalf, resentencing, and

changing attorneys. *Id.* ¶¶ 27–28. When the supreme court finally resolved the merits of his appeal, it concluded that the trial court should have disqualified the county attorney's office from the case because the defendant's prior defense counsel had joined the office three days before trial and the office failed to rebut the presumption that an impermissible conflict of interest existed. *Id.* ¶¶ 25–26. Thus, the supreme court determined that the trial court committed an error. *Id.* ¶ 26.

¶18 Having identified an error, the court then considered the question of prejudice. *Id.* ¶ 27. It stated that to support a reversal, appellate courts generally "require a showing of prejudice," that is, a showing by the defendant that absent the error "there is a reasonable likelihood that the outcome of [the] trial would have been more favorable." *Id.* In a departure from this rule, it decided to "presume prejudice" on the "specific facts" presented to it. *Id.* The court reasoned that such a presumption was justified by the fact that, during the twenty-year delay in hearing the appeal, "[m]uch of the record has been lost or destroyed" due to various "missteps outside of [the defendant's] control." *Id.* ¶¶ 27–28. Under those circumstances, the court determined that "it would be unjust to hold an incarcerated defendant responsible for the loss of the court records by requiring him to demonstrate the likelihood of a more favorable outcome." *Id.* ¶ 27. The court therefore reversed and remanded for a new trial. *Id.* ¶ 28.

¶19 Bunker likens his case to *McClellan* and asks us to presume prejudice due to delay. But the supreme court's decision to presume prejudice in *McClellan* was grounded in the fact that the very records that might have allowed the defendant to show prejudice were missing or destroyed as a result of the delay from mismanagement of his case. *See id.* ¶¶ 27–28, 34. In other words, the defendant's ability to demonstrate prejudice was hampered by the long delay in hearing his appeal. *See id.* Bunker has not claimed that he would face similar difficulty in demonstrating prejudice under the facts of his case, and he has

not identified any records that are now unavailable because of the length of time that it has taken to hear his appeal of his probation revocation. We therefore conclude that this case is distinguishable from *McClellan*, and we rely on *McClellan*'s general direction that for an error to warrant reversal, the appellant must show prejudice. *See id.* ¶ 27.

¶20    Bunker next relies on *Harris v. Champion*, 15 F.3d 1538 (10th Cir. 1994), in which the United States Court of Appeals for the Tenth Circuit concluded that "delay in adjudicating a direct criminal appeal beyond two years from the filing of the notice of appeal gives rise to a presumption that the state appellate process is ineffective." *Id.* at 1556.

¶21    In *Harris*, the Tenth Circuit addressed indigent state defendants' collateral claims that their rights were violated by the delay in processing their direct criminal appeals in Oklahoma courts. *Id.* at 1546. At the time, "the appellate criminal justice system in Oklahoma was in a crisis," resulting in delays— for example, "two to four years before [indigent defendants'] appellate brief[s] would be filed." *Id.* at 1550; *see also id.* at 1546. In addressing the defendants' claims, the Tenth Circuit required the state to "afford the defendant a timely appeal, for an appeal that is inordinately delayed is as much a meaningless ritual as an appeal that is adjudicated without the benefit of effective counsel or a transcript of the trial court proceedings." *Id.* at 1558 (cleaned up). Put another way, unlike the Utah Supreme Court in *Arguelles*, the *Harris* court expressly recognized the right to a timely appeal. *Compare id.*, *with Arguelles*, 2003 UT 1, ¶¶ 124–25 (noting the *Harris* decision and declining to reach a similar conclusion). *Harris* is therefore distinguishable on this basis alone.

¶22    Even so, *Harris* does not lend support to Bunker's position. To evaluate whether a defendant's right to timely process had been violated by delays in the appellate process, the *Harris* court employed a similar framework to that enunciated by

the United States Supreme Court for analyzing a defendant's Sixth Amendment right to a speedy trial. 15 F.3d at 1558–59 (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). The *Harris* court stated that the following factors should be assessed and balanced:

> a. the length of the delay;
>
> b. the reason for the delay and whether that reason is justified;
>
> c. whether the petitioner asserted his right to a timely appeal; *and*
>
> d. whether the delay prejudiced the petitioner by
>
>> i. causing the petitioner to suffer oppressive incarceration pending appeal; *or*
>>
>> ii. causing the petitioner to suffer constitutionally cognizable anxiety and concern awaiting the outcome of his or her appeal; *or*
>>
>> iii. impairing the petitioner's grounds for appeal or his or her defenses in the event of a reversal and retrial.

*Id.* at 1559.[4] With regard to the first factor—length of delay—the court concluded that "a two-year delay in finally adjudicating a

_____

4. In a similar case to the one at hand, this court expressly declined a criminal defendant's invitation "to apply *Harris*'s four-part test in evaluating whether his due process rights to a timely appeal were violated." *State v. Frausto*, 2002 UT App 259, ¶¶ 31–33, 53 P.3d 486. This case predated *Arguelles*, and without discussing whether the defendant had the right to a timely

(continued…)

direct criminal appeal ordinarily will give rise to a presumption of inordinate delay that will satisfy this first factor in the balancing test." *Id.* at 1560.

¶23 Bunker reads *Harris* as standing for the proposition that a criminal defendant who has faced a two-year delay in the appellate process is presumptively relieved of the burden to show prejudice stemming from the delay. To the contrary, the *Harris* court explained that a two-year delay may be used "only to presume excessive delay," "not to presume the ultimate issue of unconstitutionality." *Id.* at 1560 n.10; *see also id.* at 1561 ("The passage of two years creates only a presumption of inordinate delay on appeal."). The court further instructed that to reach the ultimate issue, "the other prongs of the *Barker* test also must be addressed." *Id.* at 1560 n.10. Indeed, the court stated that a defendant ordinarily "must make some showing on the fourth factor—prejudice—to establish a due process violation."[5] *Id.* at 1559. *Harris* therefore does not support Bunker's position that delay alone may be presumptively prejudicial. Given that Utah law does not recognize the right to a timely appeal and given that the cases on which Bunker relies are inapposite, the second component of Bunker's argument—the delay in his appellate process—also does not weigh in favor of discerning error, let alone structural error.

---

(…continued)
appeal, this court indicated that it is important for defendants alleging due process violations to "show how [they have] suffered prejudice because of the delays in [their] appeal[s]." *Id.* ¶ 37.

5. The *Harris* court did recognize that "delay substantially beyond two years, at least in a case that does not warrant a lengthier appellate process, will reduce the burden of proof on the other three factors necessary to establish a due process violation." *Harris v. Champion*, 15 F.3d 1538, 1562 (10th Cir. 1994).

¶24 In sum, Bunker has not convinced us that the unfortunate delay in processing his appeal violated his rights or constituted structural error. Because there was no error or structural error that affected the "very framework" of his appeal, *see State v. Cruz*, 2005 UT 45, ¶ 17, 122 P.3d 543, he is not relieved of his burden to show how he was prejudiced by the delay in his appeal. Bunker has not made that showing here. We therefore deny his request that we fashion a remedy for the delay.

CONCLUSION

¶25 Bunker has not established that his rights were violated by a delay during his appeal. He also has not shown that there is a structural error for which we must presume prejudice, and we deny his related request for relief. We accordingly affirm the district court's decision revoking his probation.

—————————